UNION PAC. RY. CO. v. CALLAGHAN.

(Circuit Court of Appeals, Eighth Circuit. July 10, 1893.)

No. 248.

1. MASTER AND SERVANT—VICE PRINCIPAL—CONDUCTOR OF REPAIR TRAIN AND SECTION FOREMAN.

The conductor of a repair train on the main line of a railroad is a vice principal with respect to the section foreman of a branch line who is injured by the conductor's negligence while riding on the repair train under orders from the railway superintendent to take all his section hands and assist in repairing the main line. Railroad Co. v. Ross, 5 Sup. Ct. Rep. 184, 112 U. S. 377, followed.

2. SAME—CONCURRENT NEGLIGENCE OF MASTER AND FELLOW SERVANT—BURDEN OF PROOF.

A master is liable for an injury to his servant, caused by the master's negligence and the concurrent negligence of a fellow servant, but the burden is on the plaintiff to show that the master's negligence is the proximate cause of the injury.

3. NEGLIGENCE—PROXIMATE CAUSE—NEARNESS IN TIME AND PLACE.

The proximate cause of an injury is not necessarily or generally the act or omission nearest in time or place.

4. SAME—EVIDENCE—QUESTION FOR JURY.

Under the rules of a railway company, in case of an extraordinary storm, trains were required to stop before crossing bridges and other points liable to damage, until a man had been sent forward to inspect

them. Conductors were required to make careful inquiry at all stopping places, and, when thought advisable, to make extra stops, to ascertain the extent and severity of storms, taking no risk. The conductor and engineer of a train sent out to repair a railroad after a heavy storm knew of the dangerous condition of the roadbed. A section foreman signaled the train to stop, in order to give information of the dangerous condition of a bridge, and the engineer slowed down, whereupon the conductor signaled him to go ahead, and the train proceeded at 15 miles an hour, without receiving the section foreman's information, ran upon the bridge, disregarding a danger signal placed thereon, and broke it down, injuring plaintiff, who was riding on the train. *Held,* that it could not be said as a matter of law that the engineer's negligence in disregarding the danger signal interrupted the sequence between the negligence of the conductor in ordering the train ahead without obtaining the section foreman's information and the injury complained of, and that the court properly left to the jury the question whether the conductor's negligence was the proximate cause of the injury.

In Error to the Circuit Court of the United States for the District of Colorado.

At Law. Action by James Callaghan against the Union Pacific Railway Company for personal injuries. Judgment was given for plaintiff. Defendant brings error. Affirmed.

Statement by SANBORN, Circuit Judge:

On the 18th day of August, 1890, a repair train operated by the Union Pacific Railway Company, the plaintiff in error, hereafter called the defendant, fell through a defective bridge, and James Callaghan, the defendant in error, hereafter called the plaintiff, who was riding upon it, was injured. He sued the defendant for negligence in the operation of this train, and recovered judgment upon the verdict of a jury, and it is to reverse this judgment that this writ of error was sued out. The train was running from the city of Trinidad to the town of Trinchera, in the state of Colorado. It consisted of five flat cars, loaded with timbers to be used in repairing bridges on the road over which it was running, three box cars, and a caboose. Heavy storms had prevailed during the week preceding the accident, had caused extensive washouts, and had damaged the roadbed and bridges, so that none but repair trains had passed over this railroad between Trinidad and Trinchera for three days. The plaintiff was section foreman on a branch railroad which extends from Trinidad to Sopris. On August 17th he was ordered by defendant's superintendent to take all the men on his section, and assist in repairing the main road between Trinidad and Trinchera. He boarded the repair train, which was in charge of one De Remer, at Trinidad, and at 5 P. M. on that day the train left that place for Trinchera. It proceeded slowly through the night. The track foreman and De Remer walked with a lantern in front of the train a large portion of the night. Before morning they found one bridge washed out and another rendered dangerous by floods, and repaired them. The bridge where the accident occurred was about one-half mile north of Trinchera and three miles south of Adair, which was a station on this railroad. Fifteen feet of the bank on each side of this bridge had been washed away, so that it was not safe for trains to go over it. The section foreman of the section in which the bridge was situated had discovered its condition the day before the accident, and had caused the usual danger signal—a red flag—to be placed in the space between the rails about 700 feet north of the bridge. When this repair train reached Adair it was running about 15 miles an hour. The foreman of this section was at the station of Adair. He signaled the train to stop, and if it had stopped he would have informed the men in charge of it of the condition of the bridge, and of the danger from it. The engineer saw his signal, responded to it, and slackened the speed of the train to about four miles an hour, when the conductor signaled him to go ahead, and he went on before the section foreman could give any information to the men upon the train.

One of the rules of the defendant is: "In case of an extraordinary rain storm or high water, trains must be brought to a stop, and a man sent out to examine bridges, trestles, culverts, and other points liable to damage, before passing over. Conductors will make careful inquiry at all stopping places, and, when thought advisable, make extra stops, to ascertain the extent and severity of storms, taking no risk."

The bridge was visible and its condition apparent for about 900 feet north of it on the railroad, but the engineer apparently saw neither the flag nor the damage to the bridge, but drove his train upon it, and the car on which the plaintiff was riding went through it, and injured him.

The court charged the jury that, if the plaintiff's injury was caused by the negligence of the engineer alone, he could not recover, because the latter was his fellow servant; but if the negligence of the conductor in refusing to stop at Adair, or in failing to stop the train before entering upon the bridge, contributed to the injury, the defendant was liable for the damages. All the errors assigned may be fairly said to relate to the last clause of this instruction.

Willard Teller, (H. M. Orahood, E. B. Morgan, and J. M. Thurston, on the brief,) for plaintiff in error.

W. H. Bryant, (C. S. Thomas and Bryant & Lee, on the brief,) for defendant in error.

Before SANBORN, Circuit Judge, and SHIRAS and THAYER, District Judges.

SANBORN, Circuit Judge, (after stating the facts.) Under the decision of the supreme court in Railroad Co. v. Ross, 112 U. S. 377, 5 Sup. Ct. Rep. 184, it must be held that, so far as this plaintiff was concerned, the conductor of this train was the defendant's vice principal, and that the railway company was liable for any damage to the plaintiff caused by his negligence.

It is also well settled that a master is liable for an injury to a servant which is caused by his own negligence and the concurrent negligence of a fellow servant. Railway Co. v. Cummings, 106 U. S. 700, 702, 1 Sup. Ct. Rep. 493; Harriman v. Railway Co., 45 Ohio St. 11, 32, 12 N. E. Rep. 451; Lane v. Atlantic Works, 111 Mass. 136; Griffin v. Railroad Co., 148 Mass. 143, 145, 19 N. E. Rep. 166; Cayzer v. Taylor, 10 Gray, 274; Elmer v. Locke, 135 Mass. 575; Booth v. Railroad Co., 73 N. Y. 38; Cone v. Railroad Co., 81 N. Y. 206.

But in every such case the negligence of the master must be the proximate cause of the injury, and the burden is on the plaintiff to prove such acts of carelessness on his part as constitute the immediate cause of the accident. No act contributes to an injury, in the legal acceptation of that term, unless it is a proximate cause of that injury,—unless it is near to it in the order of causation. Jacobus v. Railway Co., 20 Minn. 125, 134, (Gil. 110.)

The court below carefully instructed the jury that the plaintiff could recover only in case they found (1) that the conductor failed to exercise ordinary care in refusing to permit the train to stop when signaled at Adair, or in failing to stop it before it entered upon the bridge, and (2) that this negligence was the cause of the injury; but that, in case they found both of these issues against the defendant, they might render a verdict for the plaintiff. The

contention of the defendant is that it conclusively appears from the evidence that the accident was not the natural and probable consequence of the negligence of the conductor, but that the subsequent carelessness of the engineer, who failed to see the danger signal on the track or the damage to the bridge, and failed to stop his train before he drove upon it, was an independent intervening cause which the conductor could not have anticipated, and from which the accident in reality resulted. They urge that the conductor's order to proceed at Adair was only a direction to the engineer to proceed slowly and carefully, to stop before passing any bridges or trestles, so that a man could be sent out to examine them, and generally to proceed carefully according to the rules of the company; and they insist that the conductor could not have anticipated that the engineer would commit a breach of his duty, violate the rule in evidence, and dash upon the bridge without stopping to examine it. This argument is persuasive, and worthy of consideration.

In Railway Co. v. Elliott, 55 Fed. Rep. 949, we had occasion to consider the rule of law here invoked, and there said:

"An injury that is the natural and probable consequence of an act of negligence is actionable. But an injury that could not have been foreseen or reasonably anticipated as the probable result of the negligence is not actionable; nor is an injury that is not the natural consequence of the negligence complained of, and that would not have resulted from it but for the interposition of some new independent cause that could not have been anticipated."

The questions in this case then are, was it so clear that the accident could not have been reasonably anticipated from the conductor's violation of the rule, or was it so clear that the accident was the result of a cause independent of the conductor's negligence, and subsequently intervening, that the court should have withdrawn these questions from the jury? for it was the province of the jury to determine these questions if they were doubtful. If there was evidence in the case from which reasonable men might fairly conclude that the negligence of this conductor was the proximate cause of the injury, the court properly submitted these questions to the decision of the jury.

In Railway Co. v. Kellogg, 94 U. S. 469, 474, 476, Mr. Justice Strong, who delivered the opinion of the court, said:

"The true rule is that what is the proximate cause of an injury is ordinarily a question for the jury. It is not a question of science or of legal knowledge. * * * In the nature of things, there is in every transaction a succession of events more or less dependent upon those preceding, and it is the province of a jury to look at this succession of events or facts, and ascertain whether they are naturally and probably connected with each other by a continuous sequence, or are dissevered by new and independent agencies; and this must be determined in view of the circumstances existing at the time."

In considering these questions it must also be borne in mind that the proximate cause is not always nor generally the act or omission nearest in time or place to the effect it produces. In the sequence of events there are often many remote or incidental causes nearer in point of time and place to the effect than the mov-

ing cause, and yet subordinate to and often themselves influenced if not produced by it. Thus a defect in the construction of a boiler of an engine may long exist without harm, and yet finally be the proximate cause of an explosion, to which the negligence of an engineer, the climate, and many other incidental causes nearer by years to the effect may contribute. Cases illustrating this proposition are Railroad Co. v. Kellogg, supra; Insurance Co. v. Boon, 95 U. S. 117, 130; Lynch v. Nurdin, 1 Q. B. 29; Illidge v. Goodwin, 5 Car. & P. 190, 192; Clark v. Chambers, 3 Q. B. Div. 327; Pastene v. Adams, 49 Cal. 87.

Again, an effect is usually the result of many causes, some proximate, others remote. The rule by which the former are to be separated from the latter is admitted by all to be difficult of application, and the best that can be done is to carefully apply it to the circumstances of each case as it arises.

Bearing in mind the rules and consideration to which we have thus briefly adverted, let us now consider whether or not reasonable men might fairly conclude under all the facts and circumstances of this case that the negligence of this conductor was the proximate cause of the disaster. The train came into Adair at 5 o'clock in the morning, at a speed of 15 miles an hour. Extraordinary storms and floods had caused the destruction of bridges and parts of the roadbed from Trinidad to Trinchera. The force of men upon this train had found and repaired two dangerous bridges during the night before. The conductor and engineer knew the dangerous condition of the road, and had been moving over it during the night behind two pedestrians, who carried lanterns. The defective bridge was three miles south of Adair, and between that place and the next station. The foreman of the section, who was aware of the defect and danger, signaled the train to stop, so that he might tell the men in charge of it of the danger ahead, the engineer slackened his speed to four miles an hour, when the conductor ordered him to go on; he increased his speed; the conductor did not countermand his order; the engineer continued to obey it, ran upon the bridge, and it fell. The conductor must have known where that bridge was. What, then, was the natural and probable consequence of running by the station where the section foreman was waiting to give information, and upon such a bridge, without inquiry or examination, after the the disastrous floods and washouts, of which he was aware? It was disaster, destruction of property, and of life. It seems to us that these were the results the conductor might reasonably have anticipated from his acts. They were the results he ought to have anticipated, the results that a reasonably prudent man would have anticipated. Indeed, the managers of the defendant corporation who established its rules did anticipate these very results as the natural and probable consequence of such a course of action. It was because they anticipated them that they prohibited this course of action, and enacted the rule that conductors should make inquiries at all stopping places, and take no risk; and that

trains should be brought to a stop, and a man sent out to examine each bridge and trestle before passing over it in cases of such storms and floods as this in question.

But it is urged that the negligence of the conductor was not in fact the proximate cause of the accident, but that it resulted from an independent intervening cause, viz. the failure of the engineer to see the danger signal, and to stop the train himself at the bridge. There are several answers to this proposition:

First. We are unable to say from this evidence that the negligence of the engineer was an independent cause. It may have been dependent upon the negligence of the conductor; it may have been induced or caused by the latter. The conductor directed the movements of this train. The duty of the engineer was to obey his orders. When he undertook to stop at the signal of the section foreman, that the conductor might make inquiries that he was required to make by the rule as to the road before them, the engineer was ordered to proceed. He had been running his train 15 miles an hour, but had slackened its speed to 4 miles an hour when he received this order. He may have inferred, and probably did infer, that the conductor had in some way learned that there was no more danger ahead; that the rule in evidence no longer applied to this train; and hence that there was no need to stop to inquire, and that he could safely rush on at the speed that he had been making; and thus the action of the conductor may have lulled him into the fatal security that induced his carelessness.

Second. The negligence of the engineer was not an intervening cause that interrupted or turned aside the natural sequence of events, or prevented the natural and probable effect of the conductor's negligence. It simply failed to interpose the engineer's care to prevent this probable result, and left the natural sequence of events to flow on undisturbed to the fatal effect. It may be true that, if the engineer had seen and obeyed the danger signal on the track, or had seen the damage to the bridge, and had stopped the train, the accident would not have happened; but his failure was but the concurring or succeeding negligence of a servant, which permitted the conductor's breach of duty to work out undisturbed the disastrous result of which it was the primary and efficient cause. Moreover, we are unwilling to say that this conductor ought not to have anticipated the negligence of the engineer. He had ordered him to assist him in his own breach of duty, in disobeying the rule of the company requiring him to stop at Adair, and inquire; and we are unable to say but that he ought to have foreseen that this order would be taken by the engineer as a communication that the rule in evidence was no longer applicable to their train. However this may be, the negligence of this engineer did not so break the sequence of events between the negligence of the conductor and the accident as to relieve the defendant.

The independent intervening cause that will prevent a recovery on account of the act or omission of a wrongdoer must be a cause

which interrupts the natural sequence of events, turns aside their course, prevents the natural and probable result of the original act or omission, and produces a different result, that could not have been reasonably anticipated. The concurrent or succeeding negligence of a fellow servant or a third person which does not break the sequence of events is not such a cause, and constitutes no defense for the original wrongdoer, although, in the absence of the concurrent or succeeding negligence, the accident would not have happened. Martin v. Iron Works, 31 Minn. 407, 410, 18 N. W. Rep. 109; Burrows v. Coke Co., L. R. 5 Exch. 67; Ricker v. Freeman, 50 N. H. 420.

We have now stated the reasons which have led us to the conclusion that the court below submitted the questions at issue to the jury under proper instructions. For the same reasons we are of the opinion that there was no error in its refusal of the defendant's requests.

It is claimed in the argument that the negligence of the conductor was not properly pleaded, but the complaint states "that the said accident resulted and was caused entirely by the negligence, carelessness, and recklessness of the said officers of the said company, together with the conductor and engineer in charge of the train on which plaintiff was riding," and no objection was made to the introduction of any of the evidence on which the verdict was based. In view of these facts, we think the pleading is now sufficient, and the judgment below is affirmed, with costs.