ST. LOUIS, I. M. & S. RY. CO. v. NEEDHAM et al.

(Circuit Court of Appeals, Eighth Circuit. July 16, 1894.)

No. 386.

1. MASTER AND SERVANT —NEGLIGENCE OF FELLOW SERVANTS—OPERATION OF RAILROAD TRAINS.

A railroad company is not liable, under the general law, for the injury of an employé on one train caused by the negligence of the conductor in its employment on another train in leaving a switch open that it was his duty to close, as the conductor and the injured employé are fellow servants.

2. SAME—PERSONAL DUTIES OF MASTER.

The duty of opening and closing a switch in the ordinary operation of a railroad is not one of the personal duties of a master, but a duty of the servant, as a duty of operation.

3. SAME—VICE PRINCIPALS—RAILWAY CONDUCTORS.

Conductors, whether charged with the duty of handling switches or of driving trains, are, so far as actions against the common master for negligence are concerned, not vice principals, but the fellow servants of all other employés engaged in the common object of securing the safe passage of trains.

4. APPEAL—HARMLESS ERROR—GENERAL VERDICT ON SEVERAL ISSUES.

Where several issues are tried, and upon any one of them error is committed in the admission or rejection of evidence, or in the charge of the court, a general verdict cannot be sustained.

In Error to the Circuit Court of the United States for the Eastern District of Arkansas.

This was an action by Mrs. D. L. Needham and T. B. T. Williams, a minor, by his next friend, said Mrs. Needham, against the St. Louis, Iron Mountain & Southern Railway Company, to recover damages for the death of D. L. Needham. At the trial the jury found for plaintiffs. Judgment for plaintiffs was entered on the verdict. Defendant brought error.

For report of the decision on writ of error to review a previous judgment for plaintiffs, reversing that judgment, and granting a new trial, see 3 C. C. A. 129, 52 Fed. 371.

George E. Dodge and B. S. Johnson, for plaintiff in error.

James P. Clarke, J. C. Marshall, and C. T. Coffman, for defendants in error.

Before CALDWELL and SANBORN, Circuit Judges, and THAY-ER, District Judge.

SANBORN, Circuit Judge. Is a railroad company liable under the general law for the injury of an employé on one train caused by the negligence of the conductor of another train in leaving a switch open that it was his duty to close?

The writ of error is brought to reverse a judgment recovered by the defendant in error Mrs. D. L. Needham against the St. Louis, Iron Mountain & Southern Railway Company, the plaintiff in error, for the death of her husband. The action was brought under sections 5225 and 5226 of Mansfield's Digest of the Statutes of Arkansas, which permit the personal representatives or heirs at law to recover for the death of a person caused by any wrongful act, neglect, or default that would have entitled the party injured to have recovered if death had not ensued. Railway Co. v. Needham, 10 U. S. App. 339, 3 C. C. A. 129, and 52 Fed. 371.

A rule of the company provided:

"That conductors of all trains, when approaching meeting points where they are to take the siding, must go to the forward part of trains, and attend to the switch in person. On train leaving the siding, they must set up switch for the main track in person. Conductors must not assign this duty to any one, but must attend to it in person in every instance."

The decedent was a fireman on a passenger train running south from Little Rock, Ark., December 16, 1889. About two hours before this passenger train arrived at Alexander (a station 10 miles south of Little Rock), the conductor of a construction train of the railroad company caused the switch of the spur track at that place to be opened, ran his train upon that track, and then ran it north to Little Rock, and left the switch open, when it was his duty to close it. The passenger train ran into the open switch, and Mr. Needham was killed. The counsel for the company requested the court to charge the jury that the negligence of the conductor of the construction train was the negligence of a fellow servant of the deceased, on account of which the defendants in error could not recover. The court refused to grant this request, and charged the jury that, if the injury was caused by the carelessness of the conductor of any train in opening the switch and leaving it without being closed properly, then the negligence of that man was not the negligence of the fellow servant, but the negligence of the company, and that, if the death of Needham was caused by that negligence, the defendants in error could recover.

In City of Minneapolis v. Lundin, 7 C. C. A. 344, 58 Fed. 525, 527, this court held that a servant might become the vice principal of his master, either on account of the character of the duties the performance of which was intrusted to him, or on account of the position of general supervision and control of the entire business or a great department of the business of his master in which he might be placed. An effort is made to sustain the ruling below on both these grounds. It is contended—First, that the duty of keeping the switch in proper position for the passage of trains is an absolute personal duty of a railroad company, and that it cannot so delegate it as to relieve itself from liability for negligence in its performance (the learned judge who tried this case below has expressed his views upon this question in Mase v. Railroad Co., 57 Fed. 283); second, that the conductor of a railroad train is the head of a distinct department, and hence is a vice principal for all of whose derelictions of duty the railroad company is responsible.

Prima facie all persons engaged in a common employment in the service of the same master are fellow servants. A servant who enters with others upon a common employment in the service of the common master assumes the ordinary risks of that service. One of these ordinary risks which he thus assumes is the risk of injury from the negligence of his fellow servants.

It is the duty of the master to use ordinary care to employ fit and reasonably careful co-workmen to assist in the common service. It is his duty to use ordinary care to furnish reasonably safe machinery and instrumentalities with which the servant may perform his work, and a reasonably safe place in which he may render his service, and to use ordinary care and diligence to keep the machinery, instrumentalities, and place in a reasonably safe condition. These are absolute personal duties of the master, and cannot be so delegated as to relieve him from liability for their negligent performance.

But is the timely opening and closing of switches in the ordinary operation of a railroad one of these absolute duties?

The quarryman who uses due care to furnish to competent servants, and to keep in repair, a strong and sound derrick, in a reasonably safe place, to handle the product of his quarry, has performed his duty as a master. He is not responsible to one of his servants because another so negligently operates the ropes or the pulleys that the safe place that the master furnished is made unsafe, and the strong derrick dangerous, so that injury results.

The manufacturer of lumber who uses due care to furnish and to keep in repair, in a reasonably safe place, suitable machinery to transform trees into the myriad forms the uses of man demand, has performed his personal duty when he has placed this machinery in the hands of reasonably competent servants to be operated. The risk that the place in which it is operated will become unsafe, or the machinery dangerous, by the negligence of some of the servants in operating it, is assumed by the servants themselves, because upon them rests the duty of careful operation.

In other words, the line of demarkation here between the absolute duty of the master and the duty of the servants is the line that separates the work of construction, preparation, and preservation from the work of operation. Is the act in question work required to construct, to prepare, to place in a safe location, or to keep in repair the machinery furnished by the employer? If so, it is his personal duty to exercise ordinary care to perform it. Is the act in question required to properly and safely operate the machinery furnished, or to prevent the safe place in which it was furnished from becoming dangerous through its negligent operation? If so, it is the duty of the servants to perform that act, and they, and not the master, assume the risk of negligence in its performance.

The roadbed, ties, tracks, stations, rolling stock, and all the appurtenances of a well-equipped railroad together constitute a great machine for transportation. It is the duty of the railroad company to use ordinary care to furnish a sound and reasonably safe machine, to use due diligence to keep it in proper repair, and to use ordinary care to employ reasonably competent servants to operate it; but,

when this duty is performed, the duty rests upon the servants to operate it carefully. In the case before us there is no evidence that the conductor who negligently left the switch open was not selected with reasonable care. There is no claim that there was any defect in the switch that hindered or prevented the conductor from closing it. The company furnished a switch sufficient to move the rails, and used due care in selecting the servant to operate it. Before this servant commenced to operate it, the switch was closed, so that the passenger train on which the decedent was killed might have passed in safety. It became the duty of the conductor, in the operation of the railroad, to open this switch, and to run his train through it upon the spur track. He did so. It then became his duty to take his train off the spur track, and to close the switch. He took his train off, and proceeded south, but carelessly left the switch open. His negligence was not in the construction, preparation, or repair of the railroad, but in its operation. The railroad was safe before he made it unsafe by his negligence in operating it, and he was discharging none of the personal duties of the master, but one of the duties of the servant, when he became guilty of the fatal negligence. Any other holding would annihilate the now settled rule of liability for the negligence of fellow servants. It will not do to say that the timely movement and fastening of a switch in the ordinary operation of a railroad is requisite to provide a safe place for the next train to be operated in, and hence is one of the personal duties of the master. Under such a rule, it would become the absolute duty of the master to so operate all switches, all turntables, the levers of all engines, all brakes, all cars, and every appurtenance of the railroad that every place upon it should at all times be safe, and no negligence of any employé could ever cause an injury to another servant for which the master might not be held liable. At the instant of the injury, every place in which an injury is inflicted is unsafe. The test of liability is not the safety of the place nor of the machinery at the instant of injury, but the character of the duty, the negligent performance of which caused the injury. Was it a duty of construction, preparation, or repair, or was it a duty of operation of the machine?

In our opinion, the duty of opening and closing a switch in the ordinary operation of a railroad is not one of the personal duties of the master, but a duty of operation,—a duty of the servant,— for negligence in the discharge of which another servant of the same master, engaged in operating a train over the same railroad, cannot recover. And so are the authorities.

In Randall v. Railroad Co., 109 U. S. 483, 3 Sup. Ct. 322, a brakeman working a switch for his train on one track in a railroad yard was held to be a fellow servant with the engineer of another train of the same corporation. Mr. Justice Gray, in delivering the opinion of the court, said:

"The general rule is now firmly established that one who enters the service of another takes upon himself the ordinary risks of the negligent acts of his fellow servants in the course of the employment. * * * Persons standing in such relations to one another as did this plaintiff and the engineman of

the other train are fellow servants, according to the very great preponderance of judicial authority in this country, as well as the uniform course of decision in the house of lords and in the English and Irish courts, as is clearly shown by the cases cited in the margin."

And he cites numerous authorities.

In Naylor v. Railroad Co., 33 Fed. 801, an engineer who came to his death by the carelessness of a switchman in leaving a switch open was held to be a fellow servant of the latter.

In Roberts v. Railway Co., 33 Minn. 218, 22 N. W. 389, a train ran off the track in consequence of a misplaced switch, negligently left open by the switchman, and caused the death of the baggage master on the train. The court held that the switchman and baggage master were fellow servants, within the rule exempting the company from liability.

In Harvey v. Railroad Co., 88 N. Y. 481, 484, the fireman on an engine which was thrown from the track by a misplaced switch, left open by the negligence of a switchman, was held to be a fellow servant of the latter. The court said:

"This is a plain case. It is evident that the primary cause of the injury was the neglect of the switchman Baldwin to properly adjust the switch after using it to pass the local freight back upon track number three. As Baldwin must be deemed to have been the coservant of the plaintiff's intestate, the plaintiff cannot recover, unless some neglect of the defendant, as principal, also contributed to produce the injury."

In Slattery v. Railway Co., 23 Ind. 81, a brakeman on a train and one whose duty it was to attend to the switch were declared to be engaged in the same general undertaking, and it was held that the company was not liable to one for an injury caused by the negligence of the other.

In Railroad Co. v. Henry, 7 Ill. App. 322, the court held that an engineer running a switch engine and a switch tender were engaged in a common employment, and were fellow servants.

In Walker v. Railroad Co., 128 Mass. 10, an engineer and fireman were killed by a misplaced switch, which had been negligently left open; and, upon an action to recover damages from the company, the court below directed a verdict for the defendant, and this verdict was sustained.

In Miller v. Railway Co., 20 Or. 285, 26 Pac. 70, the engineer and fireman upon one train were injured through the negligence of the conductor and brakeman of another, who had failed to properly close a switch. The court held them all to be fellow servants with each other, and refused to permit a recovery against the company. In the opinion in this case the authorities are carefully reviewed, the reasoning is conclusive, and the most satisfactory and exhaustive consideration of this subject we have found in the books is presented.

See, also, Farwell v. Railroad, 4 Metc. (Mass.) 49; Gilman v. Railroad, 10 Allen, 233; Railway Co. v. Troesch, 68 Ill. 545; Tinney v. Railroad Co., 62 Barb. 218; and McKin. Fel. Serv. § 138.

But it is said that the conductor whose negligence caused the injury occupied such a position of authority, control, and supervi-

sion that he was a vice principal of the company, for whose derelictions of duty it was responsible, whatever might be the character of the duty he engaged to perform. In support of this proposition are cited Railway Co. v. Ross, 112 U. S. 377, 5 Sup. Ct. 184; Railway Co. v. Callaghan, 6 C. C. A. 205, 56 Fed. 988; Garrahy v. Railroad Co., 25 Fed. 258; Ragsdale v. Railway Co., 42 Fed. 383; and Mase v. Railroad Co., 57 Fed. 283.

The first two cases are easily distinguishable from that before us. In the Ross Case the engineer on a freight train recovered from the company for the joint negligence of the conductor of his own train and the conductor of a gravel train. The court drew a distinction "between servants of a corporation exercising no supervision over others engaged with them in the same employment, and agents of a corporation clothed with the control and management of a distinct department, in which their duty is entirely that of direction and supervision" (112 U. S. 390, 5 Sup. Ct. 184), and rested its decision on a ground that has no application to this case, viz. that the person injured was under the direct authority and control of the person whose negligence caused the injury. Moreover, the decision in the Ross Case has been so limited and restricted by the subsequent decisions of the supreme court that it cannot now be treated as authority in any case which does not present substantially the same state of facts.

In Railway Co. v. Callaghan, supra, the plaintiff was not the direct subordinate of the conductor. But he was riding, by direction of the company's superintendent, on a train that was under the entire control and management of the conductor, who directed at what time it should start, at what speed it should run, at what stations it should stop, and for what length of time, and everything essential to its successful movements; and it was by the negligence of this conductor in discharging his duty of supervision and control over the operation of this train, viz. in driving it too fast, and in failing to stop at proper stations, that he ran it into a defective bridge, and caused the injury.

The opinion in Mase v. Railroad Co., supra, rests upon the proposition that the character of the work of a switchman makes him a vice principal,—a proposition that we have already discussed and disapproved.

So far as the cases of Garrahy v. Railroad Co., supra, and Ragsdale v. Railroad Co., supra, hold that under the general law a conductor or employé on one train, whose negligence causes the injury of an employé of the same master on another train, is not the fellow servant of the latter, it is sufficient to say that they have now been so universally disapproved by repeated decisions of the national courts and by the late decisions of the supreme court that they are no longer authority.

Thus, in Randall v. Railroad Co., 109 U. S. 483, 3 Sup. Ct. 322, which was decided in 1883, the brakeman engaged on one engine was injured while turning the switch for his train, by the negligence of the engineer of another engine, who ran the latter upon him. This engineer had absolute control of his engine and of all

its movements at the time, but he was held to be a fellow servant of the injured brakeman, and the company was declared to be exempt from liability.

In Steamship Co. v. Merchant, 133 U. S. 375, 10 Sup. Ct. 397, which was decided in 1889, the stewardess of a steam vessel was injured through the negligence of the porter and carpenter of the same vessel. The latter failed to properly secure a railing across the gangway, and the stewardess leaned over it, and fell into the water. The persons composing the ship's company were divided into three departments,—the deck department, the engineer's department, and the steward's department. The carpenter and porter were in the deck department, and the stewardess in the steward's department; but she was held to be a fellow servant of the carpenter and porter, and was denied a recovery against the steamship company.

In Railroad Co. v. Andrews, 1 C. C. A. 636, 50 Fed. 728, decided by the circuit court of appeals for the sixth circuit in 1892, a brakeman on one train was held to be the fellow servant of the conductor and engineer of another train, by whose negligence a collision was caused in which the brakeman was killed.

In Railroad Co. v. Baugh, 149 U. S. 379, 13 Sup. Ct. 914, decided in 1893, the supreme court held that an engineer who, under the rules of the company, was "regarded as conductor," and who had the direction and control of his engine and of his fireman upon it, was not a vice principal of the company, and that the latter was not liable for an injury to the fireman, caused by the engineer's negligent disregard of his orders.

And, finally, in Railroad Co. v. Hambly, 14 Sup. Ct. 983, decided May 26, 1894, the supreme court held that the conductor and engineer of a passenger train who negligently drove their train upon and injured a common laborer, employed under a section foreman in repairing the railroad, were fellow servants of the laborer, and that he could not recover of the company for their negligence.

So far as the national courts are concerned, these authorities conclude the discussion, and establish the proposition that, in the absence of statutory regulation, conductors, as well as other employés, whether they are charged with the duty of handling switches or of driving trains, are, so far as actions against the common master for negligence are concerned, the fellow servants of all other employés engaged in the common object of securing the safe passage of trains; and it conclusively follows that the conductor who left open this switch in the case before us was the fellow servant of the fireman on the train who was carried through it to his death.

But it is said that, if the court erred in its charge upon the subject we have been considering, that error did not prejudice the company, because there was uncontradicted testimony that there was no target on the switch; and the court charged the jury that if the switch was not in proper order because it had no target upon it, and for that reason the injury and death were caused, the company was liable.

This position cannot be successfully maintained. The testimony was such that the jury might well have found that the injury was neither caused nor contributed to by the absence of the target, and that it resulted solely from the negligence of the conductor, who left the switch open. The defendants in error charged two acts of negligence upon this company,—the failure to provide the target; and the failure of the conductor to close the switch. Issues were raised and submitted to the jury to determine whether either of these acts caused or contributed to the injury. The verdict was general, and its generality prevents us from discovering upon which of these acts of negligence charged it was founded. A general verdict cannot be upheld where there are several issues tried, and upon any one of them error is committed, in the admission or rejection of evidence, or in the charge of the court, because it may be that the jury founded their verdict upon the very issue to which the erroneous ruling related, and that they were controlled in their finding by that ruling. Coal Co. v. Johnson, 6 C. C. A. 148, 151, 56 Fed. 810; Maryland v. Baldwin, 112 U. S. 490, 492, 5 Sup. Ct. 278.

The judgment below must be reversed, and the cause remanded, with directions to grant a new trial; and it is so ordered.