TRAVELERS' INS. CO. OF HARTFORD v. MELICK.[1]

(Circuit Court of Appeals, Eighth Circuit. December 3, 1894.)

No. 482.

1. ACCIDENT INSURANCE—PROXIMATE CAUSE OF DEATH.

The T. Ins. Co. insured R. against death resulting from bodily injury through accidental means alone, independently of all other causes, the policy providing that it should not cover suicide, sane or insane, or intentional injury. R. accidentally shot himself in the foot. The wound resulted in tetanus or lockjaw, and, on the eighteenth day after the accident, R. was found dead, with his throat cut, and a scalpel in his hand, having also evidently been in the embrace of tetanic spasms, causing intense agony, at the time of his death. Upon trial of an action against the insurance company brought by R.'s administrator, these facts appeared, and there was evidence that either the tetanic spasms or the cut would have sufficed to cause R.'s death, while expert witnesses differed in their opinions as to which did cause it. *Held* that, in this state of the evidence, the question of the proximate cause of death was for the jury, and it was not error for the court to refuse to direct a verdict for the defendant.

2. SAME.

The court charged the jury that, if they found that the shot wound caused tetanus, great pain, and delirium, and that, while in that state, the insured cut his own throat, being impelled thereto by the intense agony caused by the wound, which he was unable to resist, then the shot wound might be considered a proximate cause of that injury, and if, in a state of uncontrollable frenzy, caused by the lockjaw, resulting from the shot wound, he cut his own throat, from the direct effects of which he died, they might find that the shot wound was the proximate cause of death. *Held*, that this instruction was not erroneous, either as connecting the original accident with an event too remote in time, or as disregarding a new and sufficient cause intervening after the accident.

3. SAME—SPECIAL VERDICT.

The court submitted to the jury three forms of special verdict,—one finding that the shot-wound was the proximate cause of death; another,

[1] Rehearing pending.

that R., in a state of frenzy, induced by the agonies of tetanus, cut his throat, and the two causes combined caused his death; and the third, that the cut caused death. The jury returned the first finding. *Held*, that this fully justified a judgment for plaintiff.

4. SAME—APPLICATION OF DOCTRINE OF PROXIMATE CAUSE.
There is a difference in the application of the doctrine of proximate cause to actions for negligence and actions on contracts to indemnify for the results of a given cause. In the former, the liability is measured by the natural and probable consequence of the negligent act. In the latter, the liability is measured by the contract itself, as in this case, to indemnify against death that should result within ninety days from accidental bodily injuries alone, and the doctrine of proximate cause is applicable only to aid in determining whether or not the fatal result was caused solely by the act or accident against which the indemnity was given.

5. INSURANCE—EFFECT OF STATEMENTS IN PROOFS OF LOSS.
Statements as to the cause of death, in proofs of loss under a life insurance policy, are conclusive upon the party who makes them, by pleading or otherwise, only until he gives the insurance company reasonable notice that he was mistaken, after which they have the effect of solemn admissions, under oath, against interest, but are not conclusive.

In Error to the Circuit Court of the United States for the District of Nebraska.

This was an action by Samuel M. Melick, as administrator of the estate of Leonard H. Robbins, deceased, against the Travelers' Insurance Company, of Hartford, upon a policy of insurance. Upon the trial in the circuit court, a verdict was rendered for the plaintiff. Defendant brings error.

Charles Offutt, for plaintiff in error.

Allen W. Field and Edward P. Holmes, for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge. The first question in this case is whether or not the court below should have instructed the jury to return a verdict in favor of the plaintiff in error. The Travelers' Insurance Company of Hartford, Conn., the plaintiff in error, insured, by its written policy, Dr. Leonard H. Robbins, a physician of Lincoln, Neb., for a term of one year, against death that should result from "bodily injuries effected during the term of this insurance, through external, violent, and accidental means alone, * * * independently of all other causes." The policy provided that:

"This insurance does not cover disappearances; nor suicide, sane or insane; * * * nor accident, nor death, * * * resulting wholly or partly * * * from * * * disease or bodily infirmity, hernia, fits, vertigo, sleepwalking, * * * intentional injuries (inflicted by the insured or any other person)."

Samuel M. Melick, the defendant in error, as administrator of the doctor's estate, brought this action on the policy, and recovered a judgment in the court below. In his petition the administrator alleged that the doctor died June 18, 1890, and that his death was caused by an accidental shot wound in his foot, which he inflicted upon himself June 1, 1890. The answer denied this allegation, and alleged that his death was caused by his cutting his own throat with a scalpel, and that it resulted from intentional self-inflicted injury. The reply denied these allegations of the answer.

There was evidence that the doctor accidentally sent a bullet through the fleshy portion of his foot, June 1, 1890; that the wound thus caused became very painful, confined him to his bed, caused a fever, and gradually reduced his strength, until he died, June 18, 1890; that this gunshot wound was just such an injury as would naturally produce tetanus or lockjaw; that the doctor and his physicians feared that disease from the first, and that they used chloral and chloroform to relieve the pain and ward off this disease; that in the early morning of June 18, 1890, while the deceased was alone in his room, he was seized with tetanus; that this disease causes the most excruciating pains that human beings ever suffer; that it is fatal in a vast majority of cases; that it produces spasms or convulsions, and sometimes causes death by a spasm of the larynx, which prevents the passage of air through the trachea to or from the lungs; that the doctor was found dead in his bed, June 18, 1890, with a scalpel in his right hand, and his trachea and both his jugular veins cut; that the tetanus was sufficient to produce the death, and the throat-cutting was sufficient to produce it. The administrator, who was not a physician, stated in his proofs of loss that the insured "took a knife and cut his throat; all evidence shows that the conditions of his mind and his physical condition that prompted the suicide was caused by the shot wound"; and he testified that he thought the loss of blood from the cut produced the death, but he could not say positively. On the other hand, Dr. Shoemaker, who was the attending physician, testified that tetanus was the only cause that he should attribute the death to in this case; and Dr. Hatch, another physician, in answer to an inquiry for his opinion, said:

"Well, there was conclusive evidence that the man was in the embrace of tetanic spasms. It is impossible for mortal to tell, and no one but the recording angel will be able to tell. He was in the embrace of tetanic spasms. I think both. I think tetanic spasms and the cut,—the two were present when breath left the body."

Under this state of the evidence, it is assigned as error that the court below refused to instruct the jury to return a verdict for the insurance company; and it is contended that the question whether the shot wound which caused the tetanus, or the throat cutting, was the proximate cause of the death, was a question of law for the court.

In Railway Co. v. Kellogg, 94 U. S. 469, 474, 476, Mr. Justice Strong, who delivered the opinion of the court, said:

"The true rule is that what is the proximate cause of an injury is ordinarily a question for the jury. It is not a question of science or of legal knowledge. * * * In the nature of things, there is in every transaction a succession of events, more or less dependent upon those preceding; and it is the province of a jury to look at this succession of events or facts, and ascertain whether they are naturally and probably connected with each other by a continuous sequence, or are dissevered by new and independent agencies, and this must be determined in view of the circumstances existing at the time."

This opinion of the supreme court is a complete answer to the contention of the plaintiff in error here. Railway Co. v. Callaghan, 6 C. C. A. 205, 208, 56 Fed. 988.

It is urged that this question was for the court, and that the court was bound to declare that the cutting was the proximate efficient

cause of the death in this case, because the evidence was uncontradicted that the cutting was later in time than the shot wound, and was sufficient to cause the death.    This position might be maintained if the cutting was not itself produced by the shot wound, and if the evidence was uncontradicted that the death would not have occurred as soon from the tetanus in the absence of the cutting.    But the argument begs the primary question in the case,—whether the cutting was a cause of the death at all.    If it neither caused nor hastened the death of the insured, then it was in no sense a cause of it; and, however new or sufficient it may have been to have caused it, it could not relieve the insurance company from a death whose sole cause was the accidental injury.    This question was peculiarly one of fact. The insurance company had agreed to pay the promised indemnity for any death that resulted from the accidental shot wound alone. The question was, what did in fact cause the death,—the shot wound, the cutting, or both?    Nor would this case be withdrawn from the effect of this rule if the evidence upon this question was undisputed, for the question is always for the jury where a given state of facts is such that reasonable men may fairly differ upon it.    It is only when all reasonable men, fairly exercising their judgments, must draw the same conclusion from an admitted state of facts, that it becomes the duty of the court to withdraw a question of fact from the jury. Railway Co. v. Ives, 144 U. S. 408, 417, 12 Sup. Ct. 679; Railway Co. v. Jarvi, 10 U. S. App. 439, 450, 451, 3 C. C. A. 433, 437, 438, and 53 Fed. 65; Fuel Co. v. Danielson, 12 U. S. App. 688, 6 C. C. A. 636, and 57 Fed. 915; Railroad Co. v. Kelley's Adm'rs, 10 U. S. App. 537, 544, 3 C. C. A. 589, 593, and 53 Fed. 459; Railway Co. v. Ellis, 10 U. S. App. 640, 644, 4 C. C. A. 454, 456, and 54 Fed. 481.    But the evidence in this case was not undisputed. One witness testified that he thought the cutting was the cause of the death, another that tetanus was, and a third that it was both.    It was at least doubtful what answer ought to be given to the question upon the evidence.    It was by no means clear that no reasonable man could fairly draw the conclusion that the shot wound, and not the cutting, was the cause of the death; and the request to withdraw the case from the jury was properly denied.

A special verdict was rendered by the jury, and it is assigned as error that the court below rendered judgment thereon for the defendant in error.    Before entering upon the discussion of this assignment, let us consider what findings were necessary to sustain the claims of the respective parties to this litigation.    The administrator had alleged that the shot wound was the cause of the death, and the burden of proof was upon him to establish that fact.    The insurance company had denied this averment, and had alleged that the death was caused by the suicidal throat cutting; and the administrator had denied this allegation.    That the death was caused by suicide, or self-inflicted injuries, or resulted from any of the excepted causes named in the policy, was matter of defense, and the burden of proof was upon the insurance company to establish it.    Again, where it is doubtful from the facts of a case whether a death was caused by accidental injuries or by the suicidal act of the deceased, a presumption of

law arises that the accident, and not the suicidal act, was the cause. Mallory v. Insurance Co., 47 N. Y. 52; Cronkhite v. Insurance Co. (Wis.) 43 N. W. 731, 732; Insurance Co. v. McConkey, 127 U. S. 661, 667, 8 Sup. Ct. 1360.

The only finding, then, requisite to sustain the administrator's case here was that the shot wound caused the death. It was not incumbent upon him to obtain a finding that the cut pleaded by the insurance company did not cause it; that was the necessary legal effect of a finding that the shot wound did cause it, in the absence of any further finding as to the cause of the death. On the other hand, it was necessary to the defenses of the insurance company that it should either prevent a finding that the shot wound was the cause of the death, or procure an affirmative finding that it was caused wholly or partly by a suicidal act or intentional self-inflicted injury. In this state of the case, the court submitted to the jury three findings upon this question, and instructed them to return those which stated the facts as they found them. The three proposed findings were:

"(10) We find that the pistol-shot wound received by the said Leonard H. Robbins, on the 1st day of June, 1890, was an accident, and one insured against in said policy of insurance; and that said pistol-shot wound was the proximate cause of the said Leonard H. Robbins' death, on or about the 18th day of June, 1890."

"(8) We find that on or about the 18th day of June, 1890, after being confined to his bed, from the effects of said wound, tetanus or lockjaw had set in, superinduced and caused by said pistol-shot wound; and that the said Leonard H. Robbins, while in a state of frenzy and delirium, and in the agonies of tetanic convulsions, caused by said wound, seized a scalpel, and cut his throat; and that death followed from the two causes combined; but whether or not the said Leonard H. Robbins died from loss of blood resulting from said cut in the throat, or from tetanic convulsions or lockjaw, we, the jury, are unable to determine."

"(18) We find that the wound inflicted by the said deceased with a scalpel was a mortal wound, and that the same caused the death of said Robbins."

It will be seen that the tenth finding was that the shot wound was the cause of the death, the eighth was that the shot wound and the throat cutting together caused the death, and the eighteenth was that the throat cutting alone caused it. The jury returned the tenth finding, and rejected the eighth and eighteenth. In effect they thus found that the pistol-shot wound caused the death, and that the cutting neither caused nor assisted to cause it. This was certainly as conclusive of this question as a general verdict for the administrator, and fully authorized the judgment in his favor.

The jury also made the following findings with reference to the cutting of the throat:

"(8) We find that the wound inflicted on the throat of the insured was sufficient to produce death, independent of any and all other causes; and we further find that tetanus, suffered by the insured, superinduced by the pistol-shot wound, was sufficient to produce death, independent of all and any other causes."

"(9) We find that the insured, Leonard H. Robbins, cut his own throat with a scalpel, to end great and excruciating pains which he, the said Robbins, was then suffering from the effects of the pistol-shot wound in his foot."

"(11) We find that the cutting of his throat by Leonard H. Robbins was an act caused by physical pain and suffering, which he was unable to resist or

control, resulting from the wound in the foot; whether voluntary or involuntary, we, the jury, are unable to decide."

It is said that the ninth finding—that the insured cut his own throat with a scalpel, to end great and excruciating pains—is a finding of intentional self-destruction, and is a bar to any judgment for the administrator under the clause of the policy which excepts death by suicide. It is a conclusive answer to this proposition that the jury refused to find that the cutting either caused or contributed to the death, and did find that the shot wound caused it; hence whether the cutting was intentional or unintentional becomes immaterial, since it had no part, according to this verdict, in producing the death.

The exception to the action of the court in rendering judgment upon the findings of the jury cannot be sustained.

The objection that the findings of the jury are contrary to the weight of the evidence cannot be considered by this court. In an action at law, this is a court for the correction of the errors of law of the court below only. There was, as we have already held, sufficient evidence to warrant the submission of the question of proximate cause to the jury in this case. The court below committed no error in weighing this evidence; that duty was performed by the jury, and not by the court; and hence there is no ruling of the court in that regard for us to review, and it is not our province to review and correct the findings of the jury on questions of fact properly submittted to them. Railway Co. v. Ellis, 4 C. C. A. 454, 456, 54 Fed. 481; City of Lincoln v. Sun Vapor Street-Light Co., 8 C. C. A. 253, 257, 258, 59 Fed. 756.

The conclusions we have thus reached upon the evidence and the findings of the jury render it unnecessary to consider in this case the vexed question, exhaustively discussed in the briefs of counsel, whether the throat cutting was suicidal or accidental, with the intent of self-destruction or with the intent to cure or mitigate a mortal malady.

It is assigned as error that the court charged the jury, in effect, that if they found that the pistol-shot wound was an accident, that the wound caused tetanus, great bodily pain, and delirium or fever, and that, while in that state of fever and delirium, the insured cut his own throat, being impelled thereto by the intense agony caused by said wound, which the deceased was unable to resist or overcome, then the shot wound might be considered a proximate cause of this injury; and that if, in a period of delirium or a state of frenzy, uncontrollable because of the great pain and bodily suffering caused by the lockjaw that was produced by the shot wound, he cut his own throat with a scalpel, from the direct effects of which he died, they might, notwithstanding, find that the proximate cause of the death was the pistol-shot wound accidentally received in the foot. If this charge was erroneous, it is difficult to see how the plaintiff in error could have been prejudiced by it, in view of the refusal of the jury to sustain by their findings its defense that the cutting either caused or contributed to cause the death. As, however, the claim is strenuously urged that it must have influenced the jury, we pro-

ceed to consider it. The criticism made of this charge was that the pistol-shot wound was too remote from the cutting and the death to be considered as the moving cause of either, and that the court should have told the jury that it must appear from the evidence that the cutting of the deceased's throat was the natural and probable consequence of the shot in the foot, and ought to have been foreseen in the light of attending circumstances, and that it must appear that the death naturally followed from the shot wound, without the intervention of some act of the deceased not reasonably to be expected, before they could find that the shot wound was the proximate cause of the death. The question whether or not the court ought to have given to the jury the general rules of law on the subject of proximate cause embodied in this criticism is not before this court, because the plaintiff in error did not request the court below to give them; they were merely urged arguendo in the exceptions to the charge. The only question here is whether, in the state of the case set forth in this instruction, the pistol-shot wound was so remote from the injury inflicted by the cutting and the death that it could not be found to be their efficient or moving cause. The proximate cause has been so lately defined and the rules for its discovery so fully stated by this court that it is only necessary to refer to Railway Co. v. Elliott, 5 C. C. A. 347, 55 Fed. 949; Railway Co. v. Callaghan, 6 C. C. A. 205, 56 Fed. 988; and Railway Co. v. Moseley, 6 C. C. A. 641, 57 Fed. 921, for our views of the law upon this subject. In the last case we said that:

"The proximate cause is not always, nor generally, the act or omission nearest in time or place to the effect it produces. In the sequence of events, there are often many remote or incidental causes nearer in point of time and place to the effect than the efficient moving cause, and yet subordinate to it, and often themselves influenced, if not produced by it." Page 925, 57 Fed., and page 641, 6 C. C. A.

And in Railway Co. v. Elliott, supra, we said:

"Obviously, the relations of causes to their effects differ so widely, and are so various, that no fixed line can be drawn that will in each case divide the proximate from the remote cause. The best that can be done is to carefully apply the rule of law to the circumstances of each case, as it arises." Page 952, 55 Fed., and page 347, 5 C. C. A.

The question presented by this instruction is, like most questions involving this doctrine of proximate cause, perplexing and difficult; but after as careful a consideration as we are able to give to the supposed case stated in this instruction, in the light of the authorities and the exhaustive arguments presented by counsel, we are unwilling to say that the wound in the foot might not have been the efficient cause of the death under the facts and circumstances there set forth. It must be borne in mind that the doctrine of proximate cause has a different relation to an action for negligence from that which it bears to a contract to indemnify for the result of a given cause. In the former it measures the liability, while in the latter the contract fixes the extent of the liability. In an action for negligence the liability extends only to the natural and probable consequences of the negligent act. In the case in hand the contract is to indemnify the insured against death that shall result within 90 days from accidental

bodily injuries alone. The company was undoubtedly liable under this contract for the death of the insured if that death did in fact result from the accidental shot wound alone. The crucial question was whether or not it did in fact so result, and the doctrine of proximate cause was applicable to this case only to aid in finding a just answer to this question, and not to measure the liability which the contract had fixed.

The authority chiefly relied on to sustain the exception to this instruction is Scheffer v. Railroad Co., 105 U. S. 249. That was an action for negligence. The plaintiff was injured in a railroad wreck. The complaint alleged that the injury caused phantasms, illusions, and forebodings, which eventually prostrated the reasoning powers of the assured, and caused him to take his own life eight months after the injury. The supreme court declared that the original injury was too remote to be deemed the proximate cause of the death, and that the act of self-destruction was a new intervening cause which must be held responsible for it. But it is far from following from this decision that if the railroad company had contracted to indemnify Mr. Scheffer against a death that resulted from that wreck, and the injury there received had confined him to his bed, had worn and exhausted him with pain, and then caused an agony of delirium and fever that irresistibly impelled him to take his own life only 18 days after the injury, that court or any court would have declared the injury too remote to be deemed the efficient cause of the death. So, in Streeter v. Society, 65 Mich. 199, 31 N. W. 779, cited by counsel, where the insured received an injury at the base of his brain from a fall on the sidewalk, complained of pains in his head, changed his demeanor, and after six weeks shot himself at a time when some of the witnesses testified that he was unable to control his physical actions, the court held that the fall was too remote and unconnected with the act of self-destruction to stand as its moving cause. But it is unprofitable to review the cases. In these and other cases cited for plaintiff in error the original negligence or accident is so much further removed, so much more disconnected, from the fatal effect than the shot wound in this case is from the cutting, that they form no criterion for its determination.

In the case in hand the original cause is near in time,—only eighteen days from the fatal effect; while in the Scheffer Case it was eight months, and in the Streeter case six weeks, from it. In this case the sequence of events is neither unnatural nor improbable, and the chain of causation seems to us unbroken. It was not unnatural nor improbable that the shot wound in the foot should produce great pain and fever. It was not unnatural nor improbable that it should produce tetanus, and that tetanus should produce uncontrollable pain, fever, and delirium. It was neither unnatural nor improbable that a man in the torture of uncontrollable agony and in a delirium or fever should be irresistibly impelled to do himself an injury in an attempt to abate his suffering, or that, if he was a physician, and familiar with the use of a scalpel, near at hand, he should seize and use that to relieve his pain. The universal practice of providing such sufferers with constant attendants, in order to prevent just such

accidents, is convincing proof that this was neither an unnatural nor an improbable consequence of the excruciating torture of the lockjaw that the shot wound produced.    We are forced to the conclusion that, if the jury found the facts as stated in this instruction, they might well find that the shot wound was the efficient cause which set in motion the train of events that in their natural sequence produced the cutting and the death,—the causa causans without which neither would have been.    But it is said that this view is erroneous, because the cutting was a new and sufficient cause of the death, which intervened between the shot wound and the fatal result, and thus became itself its proximate cause.    This position is untenable, because in the state of facts set forth in this instruction the cutting was not a new cause, nor a cause independent of the original efficient cause,— the shot wound.    It was only an effect of that cause,—an incidental means produced and used by the original moving cause to produce its fatal effect.    In the absence of the shot wound the cutting would never have been.    That was dependent entirely for its existence and for its effect upon the original accident, and was a mere link in the chain of causation between that and the death.    The intervening cause that will prevent a recovery for a death which results from an accidental bodily injury indemnified against by contract must be a new and independent cause, which interrupts the natural sequence of events, turns aside their course, prevents the natural and probable result of the original accidental injury, and produces a different result, that could not reasonably be anticipated.    It may not be a mere effect of that injury, produced by it, and dependent upon it for both its existence and its effect.    Railway Co. v. Callaghan, 6 C. C. A. 205, 56 Fed. 988, 994; Railway Co. v. Kellogg, 94 U. S. 469, 475.    If the jury found that the facts were as they were stated in this instruction, the cutting was neither a new cause nor a cause independent of the shot wound, but a mere effect of it.    Therefore, it could not have been the proximate or moving cause of the death.

For the reasons already given in the affirmance of the instruction we have been considering, there was no error in the refusal of the court to give the counter instruction requested by counsel for the plaintiff in error, to the effect that the jury could not find that the wound inflicted by the scalpel was caused by the shot wound, and that, if they found the wound inflicted with the scalpel was a mortal wound, they could not find that the shot wound was a cause of the death.

Complaint is made that the court below refused to give four elaborate instructions upon the burden of proof, requested by counsel for plaintiff in error.    But in its charge the court told the jury that, to entitle the plaintiff to recover, it was necessary for them to find from the evidence that the death of the assured was proximately caused by such an accident as was covered by the terms of the policy; that it was the duty of the defendant in error to establish, by a preponderance of proof, the truth of every affirmative proposition which it was necessary for him to show, in order to justify a recovery; and that they could not base any of their findings upon conjecture.    In view of the fact that the court submitted the crucial questions in the case—

whether or not the shot wound was the proximate cause of the death, and whether or not the cutting of the throat either caused or contributed to the death—to the jury by special proposed findings on these questions, in accordance with the respective claims of the parties in their pleadings, we are persuaded that there was no error in the refusal of the court to charge more at length upon the burden of proof. The rule of law was fairly stated, and, where this is done in the general charge, there is no error in a refusal to give instructions upon the same subject requested by counsel. Railway Co. v. Jarvi, 10 U. S. App. 439, 453, 3 C. C. A. 433, 439, and 53 Fed. 65; Railroad Co. v. Washington, 4 U. S. App. 121, 1 C. C. A. 286, and 49 Fed. 347.

It is assigned as error that the court instructed the jury with reference to the statements in the proof of loss that "the deceased, Leonard H. Robbins, took a knife, and cut his throat. All evidence shows that the condition of his mind and his physical condition, that prompted the suicide, was caused by the shot wound,"—that they were at liberty, in determining the cause of death, to consider this statement of the defendant in error, but that it was not in any manner conclusive upon him; that they should only give to it such weight as they thought it might be entitled to receive; that, whatever cause of death might have been alleged in the proof of death, he was at liberty, on the trial, to show that the death resulted from some other or different cause; and that, in determining the cause of death, they should be governed by all the evidence that had been introduced upon that question. The better rule upon this subject is that statements of this nature in proofs of loss are binding and conclusive upon the party who makes them until, by pleading or otherwise, he gives the insurance company reasonable notice that he was mistaken in his statement, and that he will endeavor to show that the death was the result of a different cause from that stated in his proofs. After the insurance company has received due notice of this fact, the proofs have the probative force of solemn admissions under oath against interest, but they are not conclusive. Insurance Co. v. Newton, 22 Wall. 32; Keels v. Association, 29 Fed. 198, 201; McMaster v. Insurance Co., 55 N. Y. 222, 228, 233; Parmelee v. Insurance Co., 54 N. Y. 193. There was nothing in the charge of the court in conflict with this rule. Ample notice of the claim of the defendant in error that the death was not caused by suicide was given in the pleadings, and the proof itself disclosed the claim that the cutting was an effect of the accidental shot wound. The court, it is true, declared that this statement was not in any manner conclusive; but, if it was conclusive, it was conclusive in every manner. The court told the jury that they should only give it such weight as they thought it was entitled to receive; but there was no error in this, for the presumption is that they thought it was entitled to receive its lawful probative force. The fact is that there is no positive error in the charge the court gave here. The real complaint of counsel is that the court did not also charge the jury that the weight which they should give to the statement was that of a solemn admission under oath against interest. Undoubtedly, the court would have so charged if its attention had been called to it, and it had been requested so to do. It was not. The

question was not presented to it, and was not ruled upon, and cannot now be successfully urged upon our consideration.

Finally, it is insisted that the court erred in directing the jury to find the special verdict. Upon an examination of the record, however, we discover that no objection to this course of proceeding was made at the trial. On the other hand, counsel for the plaintiff in error requested the court to submit four special questions to the jury, and his only exceptions relative to this subject were to the refusal of the court to submit his questions, and to the statement of facts in certain of the proposed findings it did submit. The court below, therefore, was not called upon to rule upon this question, and there is no ruling here for us to review.

The judgment below must be affirmed, with costs; and it is so ordered.