(51 App. Div. 25.)

## O'LEARY v. ERIE R. CO.

(Supreme Court, Appellate Division, Fourth Department.   April 10, 1900.)

RAILROAD—INJURY TO CONTRACTOR'S SERVANT—CONTRIBUTORY NEGLIGENCE.

A contract between S. and defendant provided that S. should load all cars with grain that might be placed at defendant's elevator, and furnish labor to move all cars from the south end of the elevator to the loading spout. Part of defendant's side track through the elevator was inclined and a portion level, and defendant, having pushed a string of cars onto the track, left them standing so that some were on the incline and some on the level. S. directed his men, including plaintiff, to move the cars standing on the level, and while plaintiff was behind one of the cars on the level, pushing it, those behind him on the incline moved down, and he was caught between the car he was pushing and the one behind him. It had been defendant's custom for years to set the brake on the car standing on the incline and nearest the bottom, and, had the brake been set, the accident would not have occurred. *Held*, that defendant was not liable, since its contract with defendant did not obligate it to set the brake, and it was at liberty to discontinue the practice of so doing at any time, and plaintiff was guilty of contributory negligence.

Laughlin, J., dissenting.

Appeal from trial term, Erie county.

Action by Michael O'Leary against the Erie Railroad Company. From a judgment in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals. Reversed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

Adelbert Moot, for appellant.
John Cunneen, for respondent.

McLENNAN, J. The defendant was the owner of an elevator on the bank of Buffalo creek, in the city of Buffalo, N. Y., about 240 feet in length, extending north and south. A siding started at a point in the main track of the defendant's railroad north of the elevator, extended through it, and to a point 292 feet south of the southerly end. The track within the elevator was level. In the portion which extended to the south there was a gradual rise from the south door of less than 1 foot in 100 feet, or 2.3 feet in the entire distance of 292 feet. Cars left on that part of the siding without setting the brakes, it is claimed, would start and move by gravity slowly down towards and into the elevator. In fact, the track was built with this very slight—almost imperceptible—incline to facilitate placing the cars by hand under the grain spouts in the elevator. The defendant had entered into a contract with one Sheehan, which was in force at the time of the accident,—a similar contract having been in force for some years prior,—which provided, among other things, that Shee-

han was "to loan and trim all cars with grain that may be placed at second party's elevator in Buffalo, known as the 'Erie Elevator,'" and "to furnish all necessary labor to move all cars from the south end of said Erie Elevator and place such cars under the loading spout, and remove all such cars immediately after loading to a distance not less than sixty feet north from the northerly entrance of said Erie Elevator." The entire contractual obligation assumed by the defendant, so far as it affects any question involved upon this appeal, must be found in the foregoing provision. Shortly after the close of the day's work on the 5th of May, 1895, but in broad daylight, the defendant pushed a string of 11 cars from its main track on the north on to the elevator track, leaving about half of the cars standing upon the level track in the elevator, and the other half on the inclined track at the south end. The cars were all coupled together, and were left perfectly stationary; the four or five cars on the level track securely holding in place the cars on the incline. Having placed the cars in the position above indicated, the engine was detached, and the train crew and all the employés of the defendant left the elevator. After the cars had been standing 15 or 20 minutes in exactly the same position in which they had been placed by the defendant, Sheehan directed his men, including the plaintiff, to move the northerly four or five cars further into the elevator, so that the doors at the south end might be closed for the night. The first, or northerly, car of the line was moved with Sheehan's team; the next two were pushed forward by some of his men. The plaintiff then went behind the fourth car, and moved it forward, by putting his shoulder against it and pushing. When he had moved it a short distance, and while pushing it, all the cars behind him on the incline started and moved slowly down the grade into the elevator, catching the plaintiff between the car he was pushing and the one immediately behind him. His arm was crushed and injured in such manner that amputation at the shoulder joint was necessary, which is the injury complained of. The evidence tends to show that it had been the custom of the defendant for years prior to the accident, when it placed cars upon the elevator track for Sheehan to load, to set the brake upon the southerly car of those standing upon the incline; that the plaintiff relied upon such custom, and the accident resulted because of the failure of the defendant to follow such custom upon the occasion in question. It is claimed that such failure constituted negligence for which the defendant is liable to the plaintiff.

Assuming the facts are as claimed by the plaintiff, do they establish a cause of action against the defendant in plaintiff's favor? Concededly, the cars, as placed on the elevator track by the defendant, were perfectly safe so long as they were not disturbed or interfered with. They became unsafe, if at all, because interfered with by Sheehan's employés, including the plaintiff. It is true the cars on the incline were not held in place by setting the brake on the southerly car, as, we will assume, was customary; but they were quite as effectually blocked and held in place by the four or five cars standing upon the level track, until such cars were removed. By the terms of the contract the defendant was not required to block the cars in

any particular manner. Its full duty, as between it and Sheehan, was discharged when cars in perfect repair were placed on the elevator track in such manner that they would remain stationary until required by Sheehan in the performance of his part of the agreement. If the obligation to block the cars by setting the brake on a particular car was not imposed upon the defendant by the contract, its custom to block them in that manner, however long continued, would not create such obligation as between it and Sheehan. The defendant had the right to enter into a contract with Sheehan by which he would obligate himself to load defective cars for it, or cars entirely without brakes. In case of injury on account of such defect, Sheehan would not be entitled to recover. Sheehan's employés, if injured under such circumstances, while they might have a cause of action against him if he failed to notify them of the defects, would be without remedy against the defendant. Under such a contract, if the defendant habitually and without exception had furnished cars to Sheehan equipped with brakes, and had universally set the same, such practice, no matter how long or how faithfully observed, would not give Sheehan the right to compel the defendant to continue such practice, or prevent it from furnishing cars without brakes at will; and, if not, clearly the employés of Sheehan would not have such right by virtue of the contract. If the defendant, when it first entered upon the performance of its contract with Sheehan, had adopted the custom of setting the brake upon the north car, or upon some intermediate car, instead of setting the brake upon the south car, or had employed any other reasonable means of holding the cars in place until required by Sheehan for loading, it would have fully discharged its obligation under the contract in that regard. Employing one method instead of the other did not impose upon it the obligation to continue such custom, or prevent it from adopting any other method. The fact that an act not imposed upon the obligor by the terms of a contract has been habitually performed by him creates no obligation to continue the performance of such act. Where there is no ambiguity in the terms of a contract, or uncertainty as to its meaning, the obligation of the obligor cannot be enlarged or restricted by custom, however long continued. It is understood that if one party furnishes to another cars or other appliance for a particular purpose, which are in a condition to make their use imminently dangerous to human life, or places them in a position or situation which renders their attempted use thus dangerous, any person rightfully using or attempting to use the same, who is injured on account of such condition or situation, may recover the damages sustained; and this is entirely independent of the provisions of any contract, either express or implied, under which such cars or appliances were furnished. The rule is clearly stated by Rapallo, J., in Devlin v. Smith, 89 N. Y. 470–477, as follows:

"As a general rule, the builder of a structure for another party, under a contract with him, or one who sells an article for his own manufacture, is not liable to an action by a third party, who uses the same with the consent of the owner or purchaser, for injuries resulting from a defect therein, caused by negligence. The liability of the builder or manufacturer for such defects is, in general, only to the person with whom he contracted. But, notwithstand-

ing this rule, liability to third parties has been held to exist when the defects are such as to render the article in itself imminently dangerous, and serious injury to any person using it is a natural and probable consequence of its use."

In the case of Thomas v. Winchester, 6 N. Y. 397, the defendant, a dealer in drugs, carelessly labeled a deadly poison as a harmless medicine. It was held that he was liable, not merely to the person to whom he sold the drug, but to the person who ultimately used it. The liability was held to rest, not upon any contract, express or implied, but upon the duty which the law imposes upon every one to avoid acts in their nature dangerous to the lives of others. Mayor, etc., v. Cunliff, 2 N. Y. 165. In the case of Coughtry v. Woolen Co., 56 N. Y. 127, a contractor entered into an agreement with the defendant to put a cornice upon its mill, the defendant to erect all necessary scaffolding. The plaintiff's intestate, an employé of the contractor, was engaged in the master's work upon a scaffold erected by the defendant, when it fell, and he sustained injuries from which he died. It was held that the defendant was liable upon the ground that:

"It is evident from the nature and position of the structure that death or great bodily harm to those persons [the contractor's employés] would be the natural and almost inevitable consequence of negligently constructing it [the scaffold] of defective material or of insufficient strength. It was clearly the duty of the defendant and its agent to avoid that danger by the exercise of proper care. * * * This duty was independent of the obligation created by the contract."

In the case at bar the cars were not left in a situation which rendered them imminently dangerous to human life, within the meaning of any decision to which our attention has been called. In Mayor, etc., v. Cunliff, supra, it was said, by way of illustration, that to sell a wagon negligently manufactured out of defective materials, by which a friend of the purchaser, who borrowed it, was injured, did not entitle the person injured to recover damages against the maker, because the act of the manufacturer in selling the wagon was not such an act as was imminently dangerous to human life. In Loop v. Litchfield, 42 N. Y. 351, it was held that to manufacture and sell a defective balance wheel for use in a machine for sawing wood by horse power, which defect was known to the purchaser, did not entitle an employé of the purchaser to recover from the manufacturer damages sustained by the bursting of the wheel, because the article was not, in its nature, imminently dangerous. Longmeid v. Holliday, 6 Eng. Law & Eq. Rep. 562; Losee v. Clute, 51 N. Y. 494. The cars in question were left stationary by the defendant, and would have remained so indefinitely, except for the action of the plaintiff and his co-employés. Eleven cars, in perfect repair, standing perfectly still upon a straight track, almost level, to be moved by the plaintiff and his co-employés in broad daylight presents the situation. By the statement no element of danger is indicated. It describes a situation perfectly harmless. It is urged, however, that this situation, otherwise free from danger, became unsafe, and a menace to the life of Sheehan's employés, simply because the defendant had been in the habit of setting the

brake on a car, when occupying the place in which the south car was upon the day in question, and had discontinued that custom. The dangerous condition or situation, if it could be said to exist, was caused by the act of the plaintiff and his co-employés, and not by the omission or failure of the defendant to do any act which it was obligated to perform.

Attention is called to another class of cases, decided by the highest courts of this and other states, which it is claimed are, upon principle, authority for sustaining a recovery in this case. The case of Kowalewska v. Railroad Co., 72 Hun, 611, 25 N. Y. Supp. 184, fairly illustrates the facts upon which the rule laid down in that class of cases is based. In that case the defendant, under a contract with the Delaware & Hudson Canal Company, delivered its cars loaded with coal upon the top of a trestle of the canal company, and there left them. The cars were to be taken by a contractor of the canal company, and run down the trestle to a pocket, by the use of the brake, where they were to be unloaded. The brake on one car was so defective that the car could not be controlled when it was started down the trestle, and an employé of the contractor, working at the pocket, was killed. It was held that the defendant was liable. In that case the decision was not put upon the ground that the defendant had been accustomed to place cars without defective brakes upon the trestle, and that plaintiff's intestate relied upon the belief that such custom would be continued. It is apparent that such ground of liability would not be tenable. If it had appeared that the defendant in that case habitually placed cars upon the trestle with defective brakes, it would have been equally liable. Evidence of that fact would have tended to establish defendant's negligence, and not its freedom from negligence. The logical and very correct ground of that decision is that by the contract with the canal company the implied (if not express) duty rested upon the defendant to furnish cars reasonably safe to be used for the purpose intended, and that such duty extended to all persons lawfully engaged in carrying out such purpose. In that case, if the defendant had expressly contracted with the canal company to deliver to it upon its trestle 100 defective cars, loaded with coal to be unloaded by the canal company, and had specifically pointed out such defects, it could not be claimed that the canal company or its employés, its subcontractor or his employés, could have maintained an action against the defendant to recover damages for injury resulting from such defects. Certainly not, unless the condition or situation thus created by the act of the defendant was imminently dangerous to human life.

The other cases cited by the learned counsel for the respondent (Hoosier Stone Co. v. Louisville, N. A. & C. Ry. Co. [Ind. Sup.] 31 N. E. 365; Moon v. Railroad Co. [Minn.] 48 N. W. 679; Coughtry v. Woolen Co., supra; Gerbig v. Railroad Co., 75 Hun, 605, 27 N. Y. Supp. 594), and many others which might be cited, were all decided upon the same principle. Upon examination it will be found that in each one of the cases there was a contractual duty, either express or implied, resting upon the defendant, to perform some act the non-

performance of which caused the accident; or that by some act of omission or commission a situation was created which was imminently dangerous to human life. We think no case can be found in which it has been held that a liability arises because of the nonperformance of an act not imposed by contract, express or implied, simply because it has customarily been performed, and its performance discontinued. In the case of Nicholson v. Railway Co., 41 N. Y. 525, it appeared that the defendant had a branch track running from its main track across and into the premises of an iron company, which was owned jointly by them, and was used principally in supplying coal to the iron company's works. Persons in the vicinity of the branch track were in the habit of crossing it in going to and from the premises of the iron company. This was the habit of the plaintiff's intestate, who had been in the employ of the iron company. On the day in question four empty cars and a car loaded with coal were standing on the branch track, and, as the plaintiff's intestate was crossing in front of the loaded car, a sudden gust of wind blew the empty cars against the loaded car, and it was pushed against the plaintiff's intestate, and caused his death. It appeared that the defendant had been in the habit of setting the brakes upon cars left upon the branch track, but that it did not do so upon the day in question. The court charged the jury that it was the duty of the defendant to set the brakes, or otherwise fasten the cars, when they were left by it in the yard of the iron company, and that, if it omitted to do so, it was a violation of duty on its part. This was held error, and it was held that the plaintiff was not entitled to recover. In the case of Sutton v. Railroad Co., 66 N. Y. 243, the plaintiff's intestate was employed in a foundry, and he and the other employés were accustomed to cross defendant's tracks at a certain point. It was the custom of the defendant to disconnect cars, and allow them, by their own momentum, to pass the foundry, and then to set the brake in order to hold them in place. The plaintiff's intestate came out of the foundry as the disconnected cars passed, crossed the track, and then stopped, and, to avoid another train, stepped back upon the track, when he was struck and killed by the disconnected cars, which, in consequence of being on a down grade, and the failure of the brakeman to apply the brake, had started backward. It was held that the refusal of the court to charge that the defendant owed no duty to the deceased to set the brake, or otherwise fasten the cars, was error, and that the plaintiff was not entitled to recover. Morris v. Brown, 111 N. Y. 318, 18 N. E. 722.

The case at bar does not fall within the line of cases arising between employer and employé in which the rule is laid down that where an employer adopts a particular method of doing work, and habitually performs it in that manner, which is relied upon by the employé, and then changes the method or manner of doing the work without notice to the employé, and the employé thereby sustains injury, he may recover damages therefor. Such rule is reasonable, and is based upon the theory that there is an implied agreement upon the part of the employer to continue to do the work as it has been customarily performed until notice of a change has been given to the employé. In this case the

relation of employer and employé did not exist between the defendant and the plaintiff, and the rules of law defining the duties of parties sustaining that relation has no application. The conclusion is reached that the plaintiff is not entitled to recover, for the reason that the defendant was under no obligation to continue the custom of setting the brake upon the southerly car; that it was at liberty to discontinue the practice at any time, and was under no obligation to notify the employés of Sheehan of such discontinuance; and because the cars, as left upon the elevator track by the defendant, were not in a situation or condition which made them imminently dangerous to human life, or in such condition that injury would naturally result to the plaintiff or other employé of Sheehan attempting to move the same. But, independently of the views to which expression has already been given, we are of the opinion that it was the duty of the defendant, when it placed the cars at the elevator, to so secure them that they would remain in their places until the plaintiff and those employed with him entered upon the performance of their labors; but that it was not the duty of the defendant to so secure the cars that each one should remain in its place while the cars next to it were being removed by the plaintiff and those employed with him in the performance of their work. No such duty was imposed upon the defendant by the terms of its contract with the plaintiff's employer, and no such duty was imposed upon the defendant by any custom appearing from the evidence given on the trial. We are also of the opinion that it was the duty of the plaintiff and those employed with him in the performance of their work to see that the cars were so secured that each one would remain in its place while those next to it were being removed. Under these rules of duty, clearly the accident resulted not from any negligence of the defendant, but from the want of proper care on the part of the plaintiff, and those employed with him, which constituted contributory negligence. It follows that the judgment and order appealed from should be reversed, and a new trial granted, with costs to the appellant to abide event.

Judgment and order reversed, and new trial granted, with costs to the appellant to abide event.

ADAMS, P. J., and WILLIAMS, J., concur in result upon last two grounds. SPRING, J., concurs in result in memorandum. LAUGHLIN, J., dissents.

SPRING, J. I concur for reversal on the ground that the proof does not satisfactorily establish that there was an unvarying practice or custom by the defendant's trainmen to set the brakes on the rear car of each string left at the defendant's elevator. If that had been the practice uniformly in vogue at the time of the agreement with Sheehan, and continued ever since, I am satisfied the defendant would be liable for damages accruing from its omission to keep up this method of holding the cars. The jury were justified in holding the plaintiff free from negligence. Kettle v. Turl, 162 N. Y. 255, 56 N. E. 626.