CHICAGO, INDIANAPOLIS & LOUISVILLE RAILWAY COMPANY ET AL. *v.* MARTIN, ADMINISTRATRIX.

[No. 4,026. Filed December 10, 1902. Rehearing denied April 7, 1903. Transfer denied June 19, 1903.]

PLEADING.—*Proof.*—*Negligence.* — *Joint Action.* —*Variance.* —Plaintiff alleging joint negligence in an action against a railroad company and a stone company is not bound to proof of joint management, the right of recovery in such case being regulated by the proof, and not by allegations of the complaint. *p. 313.*

NEGLIGENCE.—*Railroads.*—*Jumping Off Car to Avoid Apprehended Danger.*—*Sudden Peril.*—*Contributory Negligence.*—Decedent was scabbling stone on a car standing on a side-track on a down grade. The car was struck by a cut of cars and started down the incline, and decedent jumped and fell upon loose spalls, or stones, and slid down under the wheels of the car and was killed. The other employes jumped in the other direction and were not injured. It appeared that no injury would have happened if decedent had remained on the car, and that the rate of speed at which the train was moving was not so great as to preclude him from alighting safely had he jumped in the opposite direction. *Held,* the finding of the jury that decedent was free from contributory fault was not erroneous. *p. 313.*

MASTER AND SERVANT.—*Assumption of Risk.*—Decedent was directed to work at scabbling stone on a car standing on a side-track on an incline, and, in making up a train, the car was started down the track, and decedent jumped and was killed. It appeared that the wheels of the car were not blocked as they should have been when left standing in such position. *Held,* that the duty of decedent was a question of fact, and it can not be declared as a matter of law that it was his duty to examine the wheels and ascertain whether they were properly blocked. *p. 314.*

MASTER AND SERVANT.—*Assumption of Risk.*—*Knowledge.*—Mere knowledge of the existence of the risk does not in all cases raise the presumption that the servant has agreed to assume it. *p. 314.*

NEGLIGENCE.—*Proximate Cause.*—*When Question for Jury.*—Where the facts are undisputed and but one conclusion can reasonably be drawn, their effect is to be determined as a matter of law by the court in the same manner as other issues between the parties; but where the inferential facts to be drawn from the main facts are in dispute, and there is room for different inferences among reasonable men, the question of proximate cause is for the determination of the jury. *pp. 315, 316.*

SAME.—*Proximate Cause.*—To justify the court in setting aside a verdict for plaintiff on the ground that defendant's negligence was not the proximate cause of the injury, the absence of connection must be substantial, not merely fanciful. *p. 316.*

SAME.—*Proximate Cause.*—*Nearness in Point of Time.*—*Other Causes Operating Conjointly.*—The fact that a negligent act was nearest in point of time does not of necessity make it the efficient cause of the accident, nor is it a defense that some other cause operated conjointly with the negligent act complained of. *p. 317.*

SAME.—*Licensee.*—Plaintiff's decedent who was employed by a stone company to dress stone while working on stone loaded on cars standing on a descending side-track was killed by the car starting down the incline. The only act of negligence proved against the railroad company was its failure to chock or block the wheels of the car. Decedent was not in the employ of the railroad company, and the railroad company had no interest in the stone quarry. *Held,* that decedent was a mere licensee of the railroad company and that defendant railroad company was not liable in damages for the injury resulting in his death. *pp. 319, 320.*

From Greene Circuit Court; *W. W. Moffett,* Judge.

Action by Marilda Martin, administratrix of the estate of John R. Martin, deceased, against the Chicago, Indianapolis & Louisville Railway Company and the Perry-Mathews-Buskirk Stone Company. From a judgment for plaintiff, defendants appeal. *Reversed as to the railroad company and affirmed as to the stone company.*

*E. C. Field, W. S. Kinnan, W. V. Moffett, H. R. Kurrie, H. C. Duncan, I. C. Batman, C. E. Davis* and *E. E. Stevenson,* for appellants.

*S. B. Lowe, J. R. East* and *R. H. East,* for appellee.

ROBY, C. J.—Marilda Martin, administratrix of the estate of John R. Martin, deceased, filed her complaint in the Greene Circuit Court against the Chicago, Indianapolis & Louisville Railway Company and the Perry-Mathews-Buskirk Stone Company, averring therein that her decedent's death was caused by the negligence of the defendants, whereby his next of kin were damaged in the sum of $10,-000, for which she asked judgment. A general verdict was returned against both defendants for $4,000, together with answers to interrogatories. A motion for judgment notwithstanding the general verdict and for a new trial was made by each defendant and overruled by the court. Judgment was rendered upon the general verdict, from which this appeal is taken, and errors separately assigned calling in question the action of the court in ruling upon said motions.

The jury were carefully instructed upon the theory that the duty of the appellant stone company toward decedent was that of a master to its servant, and that the duty of the appellant railway company toward him was to exercise due care in view of the known conditions. The evidence establishes without conflict that the appellant stone company at the time of decedent's death was operating a stone quarry; that he was in its employment, being engaged in scabbling stone (trimming rough blocks of stone with a pick, or chisel, preparatory to finer dressing). He was under no contract relation with the appellant railway company, and it had no interest in the stone quarry or its operation; its connection therewith being confined to the transportation, as a common carrier, of stone from the quarry to various points, as directed by the stone company. It owned and operated certain switch tracks in the quarry, connected with its main line of railroad by a main switch, which was about three-quarters of a mile long. It operated trains to and from its main line, employing its own men and having exclusive control over them. On the morning

of the accident the employes of the railway company had taken out two cuts of four cars. each from the switch tracks, and placed them, coupled together, temporarily on the main switch track, for the purpose of making up a train for out shipment. The main switch on which they were placed stood on a steep down grade. The eight cars thus placed were equipped with good brakes which were firmly set by the employes of the railway company when the cars were placed on the track. These employes, or trainmen, then ran their locomotive from the main switch track to one of the other side-tracks, gathered up a cut of four more cars, and backed them down to the main switch, to be coupled to the eight already standing there. The locomotive was moved down, to make this last coupling, at an estimated speed of one and one-quarter miles per hour, and as it approached the eight cars already on the main switch the bell thereon was rung. Further notice of its approach was given by calling "Heads up," which was a term used to convey warning of its approach. The cars between which the coupling was attempted were new cars, equipped with "Trojan couplers," such as are in general use. The couplers were in good repair, and were properly adjusted by the brakeman. Had the coupling been made, there would have been no danger of the cars moving down the steep grade. The coupling, for some reason not shown, failed to make, and the eight cars ran down the grade; starting very slowly, but moving constantly with accelerated speed. It is shown that a number of men, including decedent, employed by the stone company, had come over from other tracks where they had been scabbling stone, in order to finish some uncompleted scabbling on the stone loaded upon these cars. They did so in obedience to the order of the foreman under whom they were working. The scabbling was largely done after the stone had been placed on the cars. Certain side-tracks were known as "hold-overs," and the work was ordinarily done while the cars were standing on them; they having

been covered to protect the men from the weather while so engaged. The stone company had been in the habit theretofore of sending men out to the cars standing on the main switch to complete the scabbling of stone while the cars were temporarily standing there. Decedent had worked on one of these tracks until his car was transferred to the main switch as aforesaid, when he walked across the intervening space, and resumed work on the south side of the car standing on the main switch. Near where he was thus engaged an embankment of loose spalls, six or eight feet high, had been placed in proximity to the track. On the opposite side there was nothing to prevent decedent from safely alighting from the car. Farther on, piles of grout stone had been made on both sides of the track, barely leaving room for the cars to pass between them, and extending thirty feet above it. The train was being made up, and the car upon which decedent was working was taken from the hold-over track at the instance of the stone company. It was responsible for the condition of the embankment and the yard. The coming together of the cars set the eight cars in motion, and the decedent jumped off on the south side. When he struck the loose spalls, he slid down so that the wheels of the moving cars ran over and killed him. The other men alighted on the north side without injury. Decedent was working on the second car from the point of coupling, with his face to the engine. The stone upon which he was working was a large one, higher than his head. The wheels of the cars were not blocked. Cars not equipped with good brakes, when left upon the main switch, needed to be blocked; otherwise, blocking them tended to interfere with the work of the railroad company, by causing the wheels to leave the track when the train moved back. In the absence of such blocking the jury were authorized to find, as the general verdict does find, that the place was not reasonably safe for the use to which it was put by the stone company.

It is earnestly insisted that the appellee, having alleged joint negligence, can only recover upon proof of joint management and control by appellants of the cars and quarry. The general proposition is that a party must recover according to the allegations of his complaint, or not at all, but under our statute it is not material whether a joint or several liability is alleged. The right of recovery in this respect being regulated by proof, and not by allegations of the complaint. *Louisville, etc., R. Co.* v. *Treadway,* 143 Ind. 689.

Whether decedent was guilty of negligence in leaping as he did depended upon the circumstances in view of which he acted. It does not appear that any injury would have been suffered had he remained upon the car. It is in evidence that the scabbling boss joined with others in calling to the men: "The cars are running away. Everybody off." It is also shown that the men all did leave safely, except the decedent, who was thrown upon the track by the loose spalls accumulated in the yard. The rate of speed at which the train was moving was not so great as to preclude him from alighting safely, and while he might have crossed the car and found secure footing on the north side of the track, yet, his failure so to do is not to be viewed from the standpoint of a disinterested critic after the event, but from the standpoint then occupied by him. So viewed, the verdict finding him free from contributory fault can not be said to be unsupported by the evidence. The legal proposition involved is not in doubt. "The inquiry in such a case always is, did the negligence of the defendant put the injured person to the choice of adopting the alternative of an attempt to escape, or to remain under an apparently well grounded apprehension of serious personal injury? Did he act with ordinary prudence, considering all the circumstances which surrounded him, or was his injury the result of rash apprehension of danger which

did not exist?" *Woolery* v. *Louisville, etc., R. Co.,* 107 Ind. 381, 387, 57 Am. Rep. 114.

It is further contended that the conditions making the place where decedent was directed to work dangerous were open and obvious, and therefore assumed by him. The master's duty is to use reasonable care to provide the servant with a reasonably safe place in which to work. The servant has the right to assume that such duty has been discharged. He can not, of course, act upon such assumption as against the evidence of his own senses. Whether decedent knew or ought to have known the danger to which he was subjected was a question of fact. Whether the absence of and the necessity for blocking under the wheels was or should have been known to him was also a question of fact. The exigency which required work to be done on cars while being made into a train would not seem to contemplate that each individual employe should take time to examine all the wheels of the eight cars, to ascertain if a sufficient number of them were properly blocked, or to inspect the brakes thereon; and it can not be said, as a matter of law, that the decedent might not properly rely upon the master having discharged his duty in regard to them. Mere knowledge of the existence of the risk does not in all cases raise the presumption that the servant has agreed to assume it. *City of Ft. Wayne* v. *Christie,* 156 Ind. 172; *Consolidated Stone Co.* v. *Summit,* 152 Ind. 297.

The decedent was ordered to work under circumstances involving a risk not contemplated by his employment. He received no warning from the master of increased danger. The descending grade and the general conditions existing were open to observation. To make the place safe, it was necessary that the wheels of the cars be blocked. Whether this had been done, or not, was not a fact necessarily within the equal knowledge of the decedent and his employer. *Brazil Block Coal Co.* v. *Hoodlet,* 129 Ind. 327, 337. The question is not one as to the negligent use of appliances.

The stone company put its men at work scabbling stone upon a platform. It was under obligation, therefore, to use reasonable care to make the platform reasonably safe for that use. The freight-car was not an appliance of the stone business. It was used as a platform or place upon which to work. The duty of the master with regard to it was no different from what it would have been had the platform not been upon wheels at all. The only difference was in the measures necessary to make the place reasonably safe.

Counsel for the stone company argue that the decedent's death was not the result of any act or omission on its part, but that the railway company, an independent intervening agency, put the cars in motion by attempting to couple to them additional cars, and thereby became the responsible cause of the accident. The doctrine of proximate cause is not in itself involved in obscurity. "The true rule is, that what is the proximate cause of an injury is ordinarily a question for the jury. It is not a question of science or of legal knowledege. It is to be determined as a fact, in view of the circumstances of fact attending it." *Milwaukee, etc., R. Co. v. Kellogg,* 94 U. S. 469, 24 L. Ed. 256; *Chicago, etc., R. Co. v. Fenn,* 3 Ind. App. 250, 257; *Ohio, etc., R. Co. v. Trobridge,* 126 Ind. 391; *Coy v. Indianapolis Gas Co.,* 146 Ind. 655, 36 L. R. A. 535; *Louisville, etc., R. Co. v. Ousler,* 15 Ind. App. 232, 235; *Union Pac. R. Co. v. Callaghan,* 56 Fed. 988, 6 C. C. A. 205; *Stark v. Lancaster,* 57 N. H. 88; *New York, etc., Ex. Co. v. Traders, etc., Ins. Co.,* 132 Mass. 77, 42 Am. Rep. 440.

Where facts are undisputed and but one conclusion can reasonably be drawn, their effect is to be determined, as matter of law, by the court, as in regard to other issues between parties. The finding of fact, to be complete, as contemplated by the foregoing proposition, includes such inference of fact as may be drawn from the main facts proved; the existence of such inferential fact, and not the

existence of the main facts, being in dispute, and there being room for different inferences among reasonable men, the question is for the jury. *Baltimore, etc., R. Co.* v. *Walborn,* 127 Ind. 142, 149; *Railroad Co.* v. *Stout,* 84 U. S. 657, 21 L. Ed. 745; *Pittsburgh, etc., R. Co.* v. *Bennett,* 9 Ind. App. 92, 113; *Louisville, etc., R. Co.* v. *Williams,* 20 Ind. App. 576; *Richmond, etc., R. Co.* v. *Powers,* 149 U. S. 443, 37 L. Ed. 642, 13 Sup. Ct. 748; *Cincinnati, etc., R. Co.* v. *Grames,* 136 Ind. 39.

The general verdict finds, among other things, that the negligence of the stone company, as averred, was the proximate cause of the death. If such inference is one that can not be deduced from the circumstances and facts of the occurrence as proved, then the motion for a new trial by the stone company should have been sustained; but the absence of connection must be substantial, and not merely fanciful. "The law is a practical science, and repudiates subtle refinements and speculative inquiries. It will not sacrifice substantial rights to such impracticable processes, but will reject them to make way for practical justice. Recondite discussions of efficient cause, plurality of causes, and kindred topics, are for the metaphysician and the speculative philosopher, not the practical lawyer or judge." *Louisville, etc., R. Co.* v. *Nitsche,* 126 Ind. 229, 235, 9 L. R. A. 750, 22 Am. St. 582. "The doctrine of contributory causes produces annually a crop of disputations, which savor more of the subtleties and learning of the schoolmen than of a desire to evolve any practical, intelligible rule which shall be of service in administering justice between party and party. * * * If it ever happens that logic and common sense can not be reconciled in the application of this doctrine to the decision of causes, logic must give way." *Willey* v. *Inhabitants of Belfast,* 61 Me. 569, 575.

If the appellant stone company was negligent in directing decedent to work upon the car while it was standing

upon the main switch, such negligence had its inception in the then existing conditions. The descending track was one of those conditions. The absence of blocking under the wheels of the cars was another. The fact that a train was being made up for out shipment, and that cars attached to the engine were or would be pushed against and coupled to those upon which decedent was working, were other conditions in the light of which the act of the stone company must be judged. It not only knew that the eight cars would be disturbed, but whatever was done with them was done in accomplishing the shipment of the stone at its direction and for its benefit. It can not therefore be said that the act of the railway company was wholly disconnected from the original fault of the stone company in ordering decedent to work in a place of danger; its act being one of the things which went to make up the danger. *Lane* v. *Atlantic Works,* 111 Mass. 136, 140. "The inquiry must always be whether there was any intermediate cause disconnected from the primary fault, and self operating, which produced the injury." *Milwaukee, etc., R. Co.* v. *Kellogg, supra; The G. R. Booth,* 171 U. S. 450, 19 Sup. Ct. 9, 43 L. Ed. 236, 238; *Insurance Co.* v. *Boon,* 95 U. S. 117, 131, 24 L. Ed. 395. That the act of the railway company was nearest in point of time does not of necessity make it the efficient cause of the accident. *Alexandria Mining, etc., Co.* v. *Irish,* 16 Ind. App. 534, 546; *Pennsylvania Co.* v. *Congdon,* 134 Ind. 226, 39 Am. St. 251. Nor is it a defense that some other cause operated conjointly with the negligent act complained of. *Union Pac. R. Co.* v. *Callaghan,* 56 Fed. 988, 6 C. C. A. 205; *Knouff* v. *City of Logansport,* 26 Ind. App. 202.

The reasoning of the court in the last case cited is directly in point. The position of the railway company is not identical with that of the stone company. The duty of the latter to decedent arose by implication of law from the relation of employer and employe existing between

them. The duty owed by the railroad company to the decedent depended upon different facts. If he was scabbling stone on the car at the place and under the conditions heretofore described upon the invitation of the railway company, then it was bound to provide for his safety while so engaged, and became liable for the breach of such duty. *Indiana, etc., R. Co. v. Barnhart,* 115 Ind. 399, 412; *Evansville, etc., R. Co. v. Griffin,* 100 Ind. 221-223, 50 Am. Rep. 783; *Bennett v. Railroad Co.,* 102 U. S. 577, 26 L. Ed. 235. "To make the owner or occupant liable for an injury received by one passing over his premises, something more than a mere passive acquiescence in the use of his land by others is necessary. So long as his lands are used by others, be it never so frequent, for their own convenience, he is not liable.   *   *   *   The inducement must be equivalent to an invitation, either express or implied; mere permission is not sufficient." *Evansville, etc., R. Co. v. Griffin, supra; Faris v. Hoberg,* 134 Ind. 269, 276, 39 Am. St. 261; *Woodruff v. Bowen,* 136 Ind. 431, 22 L. R. A. 198. The owner owes the licensee the duty of abstaining from any positive wrongful act that may result in his injury, but the licensee takes his own risk as to the safe condition of the premises upon which he enters. *Woodruff v. Bowen, supra; Beehler v. Daniels, etc., Co.,* 18 R. I. 563, 29 Atl. 6, 27 L. R. A. 512, 49 Am. St. 790; *Thiele v. McManus,* 3 Ind. App. 132.

In determining whether the circumstances are sufficient to imply an invitation, in the technical sense of the term, the "principle appears to be that invitation is inferred where there is a common interest or mutual advantage, while a license is inferred where the object is the mere pleasure or benefit of the person using it." *Bennett v. Railroad Co., supra;* Campbell, Negligence, §33; *Dowd v. Chicago, etc., R. Co.,* 84 Wis. 105, 54 N. W. 24, 36 Am. St. 917, 20 L. R. A. 527, 531. This seems to have been the ground for the decision in *John Spry Lumber Co.* v.

*Duggan,* 182 Ill. 218, 54 N. E. 1002, 6 Am. Neg. Rep. 475,—a case much relied upon by appellee. Its facts were that lumber belonging to the defendant was being piled by defendant's yardmen on a dock after being handed to them from a vessel by another set of men in the employment of an independent contractor to whom the defendant had let the job of unloading. One of these men was injured by the falling of a pile of timber while he was going from the vessel to a water-closet upon the dock for the use of the men there. Upon these facts the court held that the person injured was on the premises of the defendant by invitation, and not as a mere licensee. The work of the defendant in unloading its lumber was being done by the person injured, and his presence on the dock was due to that fact.

The decedent at the time of his injury was not doing any work for the railway company, or in which it had any interest by contract or otherwise. It follows that the mere knowledge of the railway company that the employes of the stone company went upon these cars after they had been billed out for the purpose of completing the scabbling of stone thereon, in the absence of any interest in such work, while sufficient to prevent them being treated as trespassers, did not amount to an invitation, but was at the most a license. Therefore, for active misconduct, if any, it must answer, but no duty upon its part arose to block the cars to make them safe for the use of the stone company and its employes in scabbling stone. *O'Leary* v. *Erie R. Co.,* 64 N. Y. Supp. 511.

The negligent acts charged against the railway company may be classified as follows: (1) Failing to keep chocks or blocks under the wheels of the eight cars, as by duty and custom required; (2) insufficient brakes upon said cars, with insufficient power and leverage; (3) setting said brakes loosely and in an insufficient manner; (4) causing other cars, heavily loaded, to be switched onto

the main switch, and to run against those already there, with great and unnecessary force; (5) using coupling appliances rusted, rough, not having been oiled, out of gear, and not properly adjusted; (6) attempting to make couplings without giving any warning to decedent, or informing him that it was to be attempted. The custom relied upon in the first specification, if it were of controlling effect *(O'Leary* v. *Erie R. Co., supra),* was not proved; the evidence being that the railway company only blocked the wheels of the cars' on the main switch when the brakes were insufficient and out of repair. The duty charged, as is heretofore stated, did not arise by operation of law. The remaining specifications of negligence, in so far as they charged active misconduct for which the railway company would be liable to one not a trespasser upon its car, are shown by the answers to interrogatories to be without foundation in fact. The motion of the appellant railway company for judgment notwithstanding the general verdict should have been sustained. Both motions made by the stone company were correctly disposed of.

The judgment against the appellant the Perry-Mathews-Buskirk Stone Company is in all things affirmed. The judgment against appellant Chicago, Indianapolis & Louisville Railway Company is reversed, and the cause remanded, with instructions to sustain its motion for judgment on the interrogatories and their answers, notwithstanding the general verdict.