Doris MEUSY, Plaintiff–Appellee,

v.

MONTGOMERY WARD LIFE
INSURANCE COMPANY,
Defendant–Appellant.

No. 90–35762.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 11, 1991.

Decided Aug. 28, 1991.

Robert J. Curran and Michael R. Rayton, Ryan, Swanson & Cleveland, Seattle, Wash., for defendant-appellant.

John P. Lynch, Seattle, Wash., for plaintiff-appellee.

Before D.W. NELSON, NOONAN and T.G. NELSON, Circuit Judges.

THOMAS G. NELSON, Circuit Judge:

Montgomery Ward Life Insurance Company appeals the district court's judgment in favor of Doris Meusy in her diversity action to recover insurance benefits arising from the death of her husband. Because the court's finding that Mr. Meusy's death from a self-inflicted gunshot wound to the chest was proximately caused by a car accident is not supported by the evidence and its reliance on *Norbeck v. Mutual of Omaha Insurance Co.*, 3 Wash.App. 582, 476 P.2d 546 (1970), *review denied*, 79 Wash.2d 1001 (1971), was misplaced, we reverse.

## BACKGROUND

On September 2, 1983, Merlin Meusy was severely injured in a car accident, suffering injuries to his back and head, including permanent disfigurement of his left ear. According to Mr. Meusy's wife and son, Mr. Meusy was upset by his ear injury and he grew his hair longer to cover it. After the accident, Mr. Meusy stayed home more and stopped attending sporting events. According to Mrs. Meusy and Mr. Meusy's son, Merlin Meusy suffered from headaches after the accident. Mr. Meusy was able to return to his employment approximately one month after the accident.

On December 2, 1983, Mr. Meusy, a recovering alcoholic who had been sober for a number of years, began drinking again. On December 3, Mr. Meusy and his son and daughter drove to Spokane, Washington to play bingo and the three purchased and consumed whiskey during the trip. According to Meusy's son and wife, when Meusy returned home in the early morning hours of December 4, he was drunk. When he arrived home, Mr. Meusy spoke with his wife about money problems, her work, and his renewed drinking. Despite his wife's words of assurance, Merlin Meusy got a gun, pointed it at his chest, and pulled the trigger. The gun misfired and Mrs. Meusy told Mr. Meusy to stop scaring her and ran from the house to her car to go get help. After searching in vain for her car keys, she returned to the house and heard a shot. Mrs. Meusy went inside and found her husband dead, with the gun in his hand and a gunshot wound in his chest. All cartridges in the gun showed evidence of having been struck by the hammer, indicating at least five misfires. A toxicology report revealed Meusy's blood alcohol content (BAC) to be 0.21% at the time of his death.

Mr. Meusy had an accidental death and dismemberment policy with Montgomery Ward Life. Benefits are payable under the policy when an insured sustains an "injury ... while occupying a private passenger automobile." The policy defines "injury" as "bodily injury caused by an accident occurring while the insurance is in force and which injury results, within 365 days after the date of the accident, directly and independently of all other causes." Specifically excluded from coverage is "any loss caused by or resulting from ... intentionally self-inflicted injury or suicide, while sane or insane."

Mr. Meusy also had a life insurance policy with Montgomery Ward. In the case of a suicide, "while sane or insane," within two years of the original policy date, however, the benefit is limited to return of the premiums paid. Mrs. Meusy brought suit after Montgomery Ward denied coverage based upon the suicide exclusions, and a bench trial was held.

After hearing testimony from Mr. Meusy's wife and son, two toxicologists, the deputy coroner and the prosecutor/coroner, the court found:

> [T]hat [Mr. Meusy's] wound, "however inflicted, in whatever state of intoxication he was in, whatever his level of depression, whatever his capacity to appreciate his own act, was proximately caused by the auto accident which occurred some three months before on September 3rd of 1983. That cruel blow which scarred not only his face but his spirit as well continued, in this Court's view, as a cause not broken by any new and independent cause of death, however it was brought about."

Reporter's Transcript, page 36. The court concluded Mr. Meusy's death was proximately caused by injuries sustained in the September 2, 1983 car accident, and awarded Mrs. Meusy full benefits of $20,000 under the life insurance policy and full benefits of $50,000 under the accidental death policy. Montgomery Ward timely appeals and we have jurisdiction pursuant to 28 U.S.C. § 1291.

## STANDARD OF REVIEW

A district court's findings of fact are reviewed under the clearly erroneous standard. FED.R.CIV.P. 52(a); *Kruso v. Int'l Tel. & Tel. Corp.*, 872 F.2d 1416, 1421 (9th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990). Under this standard, we must accept the district court's findings of fact unless upon review the court is left with the definite and firm conviction that a mistake has been committed. *Northwest Acceptance Corp. v. Lynnwood Equipment, Inc.*, 841 F.2d 918, 922 (9th Cir.1988) (citing *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). Rule 52(a) does not, however, apply to a district court's interpretation of law, which is reviewed *de novo. Insurance Co. of State of Pennsylvania v. Associated Int'l Ins. Co.*, 922 F.2d 516, 520 (9th Cir.1990) (citations omitted). The district court's conclusions may be set aside if they are

based upon an erroneous interpretation of the law. *Id.*

## DISCUSSION

The district court was willing to presume for the purpose of its ruling that Mr. Meusy took his own life and that he had the capacity to understand what he was doing, but found it unnecessary to so rule in view of its proximate cause ruling and the case of *Norbeck v. Mutual of Omaha Insurance Co.*, 3 Wash.App. 582, 476 P.2d 546 (1970), *review denied*, 79 Wash.2d 1001 (1971). In *Norbeck*, the Washington Court of Appeals upheld an award of accidental death policy proceeds to the wife of a man who died of a self-inflicted gunshot wound 82 days after he fell at his construction job, sustaining serious head injuries. The policy sued upon excepted suicide while sane or insane. *Id.* 476 P.2d at 547.

We are bound to follow the decisions of a state's highest court in interpreting that state's law. *Ogden Martin Systems, Inc. v. San Bernadino County*, 932 F.2d 1284, 1288 (9th Cir.1991) (citations omitted), *amended by* Nos. 89–55605; 89–55686 (9th Cir. May 24, 1991). "If no ruling exists from the highest court of the state, we must follow intermediate appellate decisions unless 'convinced by other persuasive data that the highest court of the state would decide otherwise.'" *Id.* at 1288–89 (quoting *West v. American Tel. & Tel. Co.*, 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940)). The Washington Supreme Court denied review of *Norbeck*. However, we decline Montgomery Ward's invitation to question the validity of the *Norbeck* analysis because it is factually distinguishable from, and not dispositive of, this case.

In *Norbeck*, there was substantial medical evidence that the injury to the decedent's brain was "both organic and psychological in nature, causing a generalized impairment of its functions;" and that the self-infliction of the gunshot wound was the result of an uncontrollable impulse resulting from the brain damage. *Norbeck*, 3 Wash.App. at 583, 476 P.2d at 547. In this case there was no such medical evidence. The testimony did not establish that the car accident or Mr. Meusy's injuries caused him to kill himself; nor was there any direct evidence or medical testimony that the accident caused Mr. Meusy to start drinking again or become suicidally depressed.[1]

While the disfigurement Mr. Meusy suffered as a result of the accident was serious and he suffered headaches and was apparently depressed following the accident, the testimony in this case does not support a chain of causation between his injuries and an uncontrollable or irresistible impulse to death by self-destruction, as was found to exist in *Norbeck*. *See id.* 476 P.2d at 548. Mrs. Meusy argues that because depression and reclusivity accompanied Mr. Meusy's physical injuries, *Norbeck* is applicable. However, while Mr. Meusy may have been depressed, there is no evidence that this rose to the level of an irresistible impulse. Injury to the outer ear is not the same as organic brain damage.

*Travelers' Ins. Co. v. Melick*, 65 F. 178 (8th Cir.1894), relied upon in *Norbeck*, is also distinguishable from this case. In *Melick*, the decedent accidentally shot himself in the foot and soon afterward, tetanus set in the wound. *Id.* at 180. While in the agonies of tetanic convulsions, the decedent, a physician, seized a scapel and cut his throat. *Id.* at 182. The court held the

---

1. Merlin Meusy's son, Loren, testified that he did not know why his father started drinking again on December 2, 1983. Loren testified that his father complained of headaches after the accident and that he took Tylenol and pain killers.

Mrs. Meusy testified that she did not think Mr. Meusy would have shot himself unless he was drunk. She testified that Mr. Meusy's death was "related to" the car accident "because he

changed." She testified that Mr. Meusy suffered from headaches almost every day and took Tylenol 3; that he was proud of his appearance and upset by the ear injury; that he stayed home and skipped outings he had previously enjoyed; that his car was totalled in the car accident and that he "felt down about losing his car and everything"; and that he seemed depressed during the discussion before he shot himself.

suicide exclusion did not preclude recovery, as "[i]n the absence of the shot wound the cutting would never have been," and that the cutting was a mere link in the chain of causation between the accidental gunshot wound and death. *Id.* at 186. The court explained "[i]t was neither unnatural nor improbable that a man in the torture of uncontrollable agony and in a delirium or fever should be irresistibly impelled to do himself an injury in an attempt to abate his suffering." *Id.* at 185. A review of the testimony in this case reveals no such link between the ear injury sustained in the car accident and any uncontrolled or irresistible impulse to do himself harm.

Counsel for Mrs. Meusy conceded at oral argument that no Washington case has permitted recovery for suicide absent medical testimony of causation. *See, e.g., Orcutt v. Spokane County*, 58 Wash.2d 846, 364 P.2d 1102 (1961). As unfortunate as the circumstances in this case are, speculation and inference cannot serve as the basis for awarding accident and life insurance benefits to Mrs. Meusy. The district court erred in applying *Norbeck* to the facts of this case. The testimony in this case does not support the causation finding by the district court, and reliance on *Norbeck* cannot make up for this deficiency or alter the plain language of the policies.

Mrs. Meusy argues on appeal that when alcoholic intoxication causes a loss of critical judgment, inflicting a mortal wound while in such a state is the same as falling prey to an uncontrollable impulse. *Norbeck, Melick* and the testimony in this case do not support this position. Absent medical testimony, this contention is no more tenable than the other causation argument.

There is not sufficient evidence to support the district court's finding that the insured's death resulted, directly and independently of all other causes, from injuries sustained in the car accident. There are not two permissible views of the evidence in this case. The evidence supports a finding that Mr. Meusy committed suicide. The district court incorrectly relied upon *Norbeck* to avoid making a finding of suicide. The proper conclusion of law should

have been that recovery by Mrs. Meusy was barred by the suicide exclusions. After review of the evidence in this case, we are left with the definite and firm conviction that a mistake has been committed. We have considered the other contentions of the parties and conclude that no additional discussion is necessary.

## CONCLUSION

The judgment in this case is reversed, the judgment against Montgomery Ward vacated, and the case remanded with instructions to dismiss Mrs. Meusy's complaint. Each side shall bear their own costs and attorney fees on appeal.

**REVERSED AND REMANDED.**