Rosemary LOZIER, Plaintiff–Appellee,

v.

AUTO OWNERS INSURANCE CO., a Michigan Corporation, Defendant-counter-claimant-Appellant;

Wilbur McDonald; Mary Lou McDonald, Counter-defendants-Appellees.

No. 90–16597.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 10, 1991.

Decided Dec. 19, 1991.

As Amended on Denial of Rehearing Jan. 24, 1992.

Paul G. Ulrich, William A. Downey, Rake, Copple, Downey & Black, Phoenix, Ariz., for defendant-counter-claimant-appellant.

Michael R. Murphy, Toci, Murphy, Lutey & Beck, Prescott, Ariz., John J. Bouma, Snell & Wilmer, Phoenix, Ariz., for plaintiff-appellee.

Before CHAMBERS, TANG and TROTT, Circuit Judges.

TROTT, Circuit Judge:

Rosemary Lozier and Wilbur McDonald were involved in a car accident, and Lozier was severely injured. McDonald's insurer, Auto Owners Insurance Company ("Auto Owners"), mishandled the claim. Pursuant to Arizona law, McDonald assigned to Lozier his bad-faith and contract claims against Auto Owners. Lozier sued Auto Owners on those claims. Sitting without a jury, the district court entered judgment of $3.5 million for Lozier. Auto Owners appeals. We have jurisdiction under 28 U.S.C. § 1291 (1988), and we affirm.

## FACTS

McDonald and Lozier had what Lozier described as a "seven months commonlaw" [sic] marriage, with a history of violence. On January 19, 1986, McDonald and Lozier had an argument, and Lozier moved out of their home. That night, they saw each other in the parking lot of a restaurant, and had a noisy dispute. Each had been drinking. They drove away in separate cars.

Later that evening, they were involved in a two-car accident, McDonald driving one car and Lozier the other. As a result of the accident, Lozier suffered a broken back and a severed spinal column. She is now a quadriplegic. McDonald was not seriously hurt. His blood-alcohol level was later tested at .18%.

At the time of the accident, McDonald was insured by Auto Owners, with a policy limit of $100,000 per person injured. The policy was valid and the premiums were paid up. The policy contained the following provision: "Exclusions. Liability Coverage does not apply: 1. To any person who intentionally causes bodily injury or property damage."

McDonald told the police that Lozier had caused the accident by ramming his car from behind. In contrast, Lozier told the police that McDonald had rammed her. There were no other witnesses to the accident.

Auto Owners hired Ken Fisher to investigate the accident,[1] and he soon learned of Lozier's injuries. On February 13, 1986, McDonald told Fisher that Lozier had caused the accident. Although Lozier offered herself for an interview, Auto Owners never accepted the offer, and did not depose her until more than a year after the accident. Fisher knew Arizona was a comparative negligence state, in which a third party's negligence would not preclude recovery against Auto Owners' insured. See generally Ariz.Rev.Stat.Ann. § 12–2505 (Supp.1991). On February 19, 1986, Fisher sent McDonald a reservation-of-rights letter based on the intentional-acts exclusion in McDonald's policy.

The initial police report of January 19, 1986, offered the tentative explanation that Lozier had hit McDonald from behind. On March 12, 1986, Auto Owners received a copy of that report. A supplement to the first police report, written six days later, included an interview with Lozier in which she accused McDonald of having hit her from behind.

The final police report was written on March 26, 1986, by Deputy Graham of the Yavapai County (Arizona) Sheriff's Department. Deputy Graham, who was not an accident reconstructionist, stated: "it is my opinion that Mrs. LOZIER['s] ... vehicle was struck at least three (3) times by Mr. MCDONALD'S vehicle.... This ... clearly constitutes a willful act on the part of ... MCDONALD." Auto Owners did not hire an accident reconstructionist to investi-

---

**1.** The parties agree Fisher was at all relevant times Auto Owners' agent.

gate the accident until the bad-faith trial with Lozier.

On February 19, 1986, Lozier asked Auto Owners to tell her McDonald's policy limits, and informed Auto Owners that she would sue if they refused to disclose the limits. The policy limits were discoverable information under the Arizona Rules of Civil Procedure. *See* Ariz.R.Civ.P. 26(b)(2). Without consulting McDonald, Auto Owners refused to disclose the limits. Lozier sued McDonald in Arizona state court on March 19, 1986. Auto Owners hired an experienced attorney, Daniel Stoops, to represent McDonald. On April 10, Auto Owners informed Stoops it was reserving its rights under McDonald's insurance policy.

On July 17, 1986, Lozier offered to settle the case against McDonald if Auto Owners would pay $100,000, the policy limits, within ten days. The district court found Lozier's time-limited offer reasonable under the circumstances. Auto Owners requested and obtained from Lozier a ten-day extension, but did not request any further extension. Time expired on the offer without a response from Auto Owners.

The day the settlement offer expired, Auto Owners hired outside counsel. On September 8, 1986, it filed a declaratory judgment to determine whether or not McDonald was insured based on the intentional-acts exclusion in his policy. Tom Froman, the in-house attorney responsible for the decisionmaking in the McDonald–Lozier file, stated that the declaratory judgment was brought because the "facts were confusing." Auto Owners' branch claims adjuster, Steve Castor, estimated as of August 4, 1986, that Auto Owners had a "50/50 shot" of obtaining a favorable declaratory judgment.

On March 24, 1987, Auto Owners' outside counsel wrote a letter stating that Auto Owners could lose the declaratory judgment action, and be subject to liability over the $100,000 policy limit for the tort of bad faith in handling the claim. On or about April 2, 1987, Auto Owners attempted to settle the case by offering to Lozier the policy limit of $100,000. Lozier rejected the offer.

On August 25, 1987, Lozier and McDonald entered into a *Damron* agreement.[2] That agreement provided for: (1) a stipulated judgment against McDonald of $3.5 million with 10 percent interest per year from the date of judgment; (2) a promise from Lozier not to execute that judgment; (3) an assignment to Lozier of McDonald's bad-faith and contract claims against Auto Owners. The Arizona Superior Court entered judgment accordingly on October 14, 1987.

On November 3, 1987, Lozier sued Auto Owners in Arizona state court on the bad-faith and contract claims. Auto Owners removed the case to federal district court. After a six-day bench trial, the district court found for Lozier. The court entered judgment against Auto Owners in the amount of $3.4 million ($100,000 credit having been given for the tendering of the policy limits), plus interest from October 10, 1987, plus $149,035 in attorney's fees. Auto Owners timely filed a notice of appeal.

## STANDARD OF REVIEW AND GOVERNING LAW

Federal law, not Arizona law, controls the standard of review in this case. *See Martinez v. Asarco, Inc.,* 918 F.2d 1467, 1470 n. 3 (9th Cir.1990). We review for clear error the district court's findings of fact. Fed.R.Civ.P. 52(a); *Meusy v. Montgomery Ward Life Ins.,* 943 F.2d 1097, 1098 (9th Cir.1991). We view the evidence in the light most favorable to the prevailing party, Lozier. *Fenton v. Freedman,* 748 F.2d 1358, 1361 (9th Cir.1984). We review de novo the district court's conclusions of law. *Meusy,* 943 F.2d at 1098. Ordinarily, we review de novo mixed questions of law and fact. *United States v. McConney,* 728 F.2d 1195, 1204 (9th Cir.) (en banc), *cert. denied,* 469 U.S. 824, 105

**2.** This agreement is named after the Arizona case of *Damron v. Sledge,* 105 Ariz. 151, 460

P.2d 997 (1969).

S.Ct. 101, 83 L.Ed.2d 46 (1984). However, "mixed questions in which the applicable legal standard provides for a strictly factual test, such as state of mind," or reasonableness, are reviewed for clear error. *Id.* at 1203–04.

In this diversity case, we apply Arizona state substantive law. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Asarco,* 918 F.2d at 1470.

## BAD FAITH

"As a general matter, insurance carriers owe their insureds three duties, two express and one implied. These are the duties [sic] to indemnify, the duty to defend, and the duty to treat settlement proposals with equal consideration." *Ariz. Prop. & Cas. Ins. Guar. Fund v. Helme,* 735 P.2d 451, 459 (1987) (en banc) (citations omitted). This appeal involves the duty of equal consideration. "[W]here an insurer fails to give equal consideration to its insured's interests by placing its own interests before that of its insured, it is guilty of bad faith." *Trus Joist Corp. v. Safeco Ins. Co. of Am.,* 735 P.2d 125, 132 (App. 1986); *see Clearwater v. State Farm Mut. Auto. Ins. Co.,* 164 Ariz. 256, 792 P.2d 719, 722 (1990) (en banc) ("the duty of good faith and fair dealing requires that an insurer give 'equal consideration' to the interests of its insured" (citations omitted)).

■ Arizona has articulated an eight-factor test for determining an insurer's bad faith:

(1) the strength of the injured claimant's case on the issues of liability and damages;

(2) attempts by the insurer to induce the insured to contribute to a settlement;

(3) failure of the insurer to properly investigate the circumstances so as to ascertain the evidence against the insured;

(4) the insurer's rejection of advice of its own attorney or agent;

(5) failure of the insurer to inform the insured of a compromise offer;

(6) the amount of financial risk to which each party is exposed in the event of a refusal to settle;

(7) the fault of the insured in inducing the insurer's rejection of the compromise offer by misleading it as to the facts; and

(8) any other factors tending to establish or negate bad faith on the part of the insurer.

*Clearwater,* 792 P.2d at 722 (citations omitted); *cf. Brown v. Superior Court,* 137 Ariz. 327, 670 P.2d 725, 734 (1983) ("No matter how the test is defined, bad faith is a question of reasonableness under the circumstances."). Based on factors (1), (3), (6), and (8), and despite factor (7), Auto Owners fails the *Clearwater* test and is liable for bad faith.

■ (1) *The Strength of Lozier's Case for Liability and Damages.* The district court correctly found that Lozier had a strong case on the issue of liability and damages. "The liability defense aspect of Wilbur McDonald's case was poor...." The police reports differed on who was responsible for the accident, but the final report found McDonald responsible. Auto Owners knew that McDonald had alcohol in his blood shortly after the accident, and knew that Arizona was a comparative negligence state. Lozier was permanently paralyzed by the accident, and was likely to get "a substantial verdict in excess of policy limits."

(3) *The Failure of Auto Owners Properly to Investigate.* Although there was some evidence that either Lozier or McDonald (or both) had acted intentionally, Auto Owners never confirmed this. It never thoroughly investigated the accident, it never deposed Lozier until the declaratory judgment action against McDonald, and it never hired an accident reconstructionist until its own money was at stake in the bad-faith suit.

Further, Auto Owners did no research into the enforceability of the intentional-acts exclusion in its policy, and no research into the effect of McDonald's possible intoxication on his ability to commit an "intentional act" under Arizona insurance law. Auto Owners argues that "the only possi-

ble tort litigation outcome supported by the evidence," was that McDonald's possible intoxication would not have affected his ability to commit an "intentional act." However, in Arizona, "[d]etermining whether an insured acts intentionally for purposes of insurance law is different than for purposes of tort law because there is no presumption in insurance law that a person intends the ordinary consequences of his actions." *Phoenix Control Sys. v. Insurance Co. of N. Am.*, 165 Ariz. 31, 796 P.2d 463, 467 (1990) (in banc) (citations omitted). McDonald could not commit an intentional act under the exclusion in his insurance policy without "a primary desire to injure" Lozier, *id.*, 796 P.2d at 468, and the ability to control his actions, *id.* Arizona courts have indicated in dicta that intoxication may remove intent for the purposes of insurance law. *See, e.g., Parkinson v. Farmers Ins. Co.*, 122 Ariz. 343, 594 P.2d 1039, 1041 (App.1979) ("Absent mental illness or intoxication ... intent exists"). The relevant law was sufficiently complex to require at least *some* legal research and factual investigation by Auto Owners. "[A]n incomplete pre-denial investigation of an insured's claim can expose the insurance company to liability for bad faith." *Aetna Cas. and Sur. Co. v. Superior Court*, 161 Ariz. 437, 778 P.2d 1333, 1336 (App.1989); *see Rawlings v. Apodaca*, 151 Ariz. 149, 726 P.2d 565, 576 (1986).

(6) *The Amount of Financial Risk to Which McDonald and Auto Owners Were Exposed in the Event of a Refusal to Settle.* In the potential litigation between McDonald and Lozier, Auto Owners was exposed to a financial risk of $100,000, the policy limits; McDonald was liable for the excess, a potential financial risk of more than $900,000, depending on the actual verdict obtained by Lozier. Even if Lozier were found 90% liable for the accident, her damages would still probably exceed the policy limits.

(7) *The Fault of McDonald in Inducing Auto Owners' Rejection of Lozier's Compromise Offer By Misleading Auto Owners as to the Facts.* As indicated above, this single factor tends to weigh in favor of Auto Owners. McDonald told investigators that Lozier was responsible for the accident without disclosing his own intoxication at the time of the accident. But this does not preclude Auto Owners' liability for bad faith. McDonald's intoxication was known to the authorities and easily discoverable by Auto Owners. Furthermore, in a comparative negligence state, McDonald's intoxication might only mitigate damages recoverable by Lozier. McDonald's omission of a material fact—his own intoxication at the time of the accident—weighs against a finding of bad faith by Auto Owners.

(8) *Other Factors Tending to Establish Bad Faith on the Part of Auto Owners.* The record reveals that Auto Owners put its own interests first at every stage. Initially, it tried to save money on a losing case by not hiring expensive accident reconstructionists, and not deposing Lozier. It tried to delay by asking for an extension of Lozier's settlement-offer, letting the extension run without responding, and—despite the requests of McDonald's attorney—filing its declaratory judgment after the offer had lapsed.

However, when outside counsel informed Auto Owners that it might be liable for all of Lozier's damages, everything changed. Within a week, Auto Owners tried to settle the case by offering to Lozier the policy limits of $100,000. When Lozier rejected the offer, Auto Owners hired an expensive accident reconstructionist to testify at trial. The district court found: "The facts which gave rise to [outside counsel's] conclusions in March of 1987 were available to Auto Owners by August 4, 1986." This finding was not clear error. Between August, 1986, when Lozier's settlement offer closed, and March, 1987, when Auto Owners itself offered the policy limits, the only important thing which had changed was Auto Owners' perception of its own risk.

When McDonald was facing catastrophic liability, Auto Owners was slow and stingy. But when Auto Owners itself was facing the same liability, it was timely and generous. Auto Owners fails the *Clearwater* test; its actions describe a pattern of self-interested behavior. It committed the tort

of bad faith by not giving McDonald's interests "equal consideration."

## EXTENT OF LIABILITY

Auto Owners argues it is liable only for the policy limit of $100,000 because the *Damron* agreement between McDonald and Lozier was invalid. *See Damron,* 460 P.2d 997. We reject this argument and hold Auto Owners liable for the full amount of the district court's judgment.

Ordinarily, "the insured [must] ... cooperate with the insurer.... He may not settle with the claimant without breaching the cooperation clause" in the policy. *United Servs. Auto. Ass'n v. Morris,* 154 Ariz. 113, 741 P.2d 246, 250 (1987) (en banc) (citations omitted).

However,

[a]ny breach ... of [the insurer's] duties deprives the insured of the security that he has purchased because the breach leaves him exposed to personal judgment and damage which ... may exceed the policy limits. Accordingly, when such a breach occurs, the insured is generally held to be freed from his obligations under the cooperation clause.

*Helme,* 735 P.2d at 459 (citations omitted). "[A]n insured being defended under a reservation of rights may enter into a *Damron* agreement without breaching the cooperation clause." *Morris,* 741 P.2d at 252.

 As a result of Auto Owners' conduct, the case was not settled, and McDonald was exposed to extreme liability. He was therefore entitled to enter into the *Damron* agreement. *See Helme,* 735 P.2d at 459. As the Arizona Supreme Court announced, "[n]o other rule is sensible. The insured[,] exposed by his insurer 'to the sharp thrust of personal liability[,] ... need not indulge in financial masochism....'" *Id.* (quoting *Damron,* 460 P.2d at 999; other citations omitted).

*Damron* agreements "must be made fairly, with notice to the insurer, and without fraud or collusion on the insurer." *Morris,* 741 P.2d at 252. "[N]either the fact nor amount of liability to the claimant is binding on the insurer unless the insured or claimant can show that the settlement was reasonable and prudent." *Id.,* 741 P.2d at 253 (citations omitted). "The test as to whether the settlement was reasonable and prudent is what a reasonably prudent person in the insureds' position would have settled for on the *merits* of the claimant's case. This involves evaluating the facts bearing on the liability and damage aspects of claimant's case, as well as the risks of going to trial." *Id.,* 741 P.2d at 254 (citations omitted) (emphasis in original).

The district court found: "[i]n view of the horrendous injuries to Lozier and the exposure of liability to McDonald, the stipulated judgment of $3.5 million was reasonable in the facts and circumstances existing at the time of the *Damron* agreement." Even reviewing de novo this mixed question of law and fact, $3.5 million was a reasonable settlement given the merits of Lozier's case.

The district court also correctly found that the *Damron* agreement was made fairly, without fraud or collusion, and that Auto Owners received notice.

Under Ariz.Rev.Stat.Ann. § 12–341.01(A) (1982), Lozier should receive attorney's fees in the district court. Lozier may apply to this court for appellate fees. *See* Fed. R.App.P. 39(a); 9th Cir.R. 39–1 ("A request for attorneys' fees ... shall be filed with the Clerk ... within 30 days after the entry of the court's decision...."). Lozier is not entitled to appellate sanctions against Auto Owners for a frivolous appeal. *See* Fed. R.App.P. 38; *Sea Harvest Corp. v. Riviera Land Co.,* 868 F.2d 1077, 1081 (9th Cir. 1989).

AFFIRMED.