988 F.2d 121
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Cecilia E. Richardson RICE, Trustee of the Horace D. and
Margaret C. Richardson Life Insurance Trust,
Plaintiff-Appellee, Cross-Appellant,
v.
NEW ENGLAND MUTUAL LIFE INSURANCE COMPANY, a Massachusetts
corporation, Defendant-Appellant, Cross-Appellee
 Nos. 92-35086, 92-35129 and 92-36624.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 8, 1993.
Decided March 9, 1993.
 
 1
 Appeal from the United States District Court for the Eastern District of Washington; No. CV-90-00150-WFN, Wm. Fremming Nielsen, District Judge, Presiding.
 
 
 2
 E.D.Wash.
 
 
 3
 AFFIRMED.
 
 
 4
 Before FARRIS and KLEINFELD, Circuit Judges, and EZRA,* District Judge.
 
 
 5
 MEMORANDUM**
 
 
 6
 New England Mutual Life Insurance Company appeals the district court's judgment, following a bench trial. The district court found New England Mutual liable under two life insurance policies insuring the life of Horace Richardson, who died of a self-inflicted gunshot wound. Cecilia Richardson Rice, Horace's daughter, cross-appeals the district court's dismissal of her claims under the Washington Consumer Protection Act, RCW § 19.86 et seq. She also appeals the district court's order granting New England's motion to amend the judgment to reduce the post-judgment interest rate. We affirm.
 
 
 7
 I. Facts.
 
 
 8
 Horace Richardson was a successful automobile dealer in Spokane Valley, Washington. On the advice of financial advisors, Richardson purchased two one million dollar life insurance policies for estate planning purposes. The date of purchase of both policies was July 25, 1988. The policies contained the following suicide provision:
 
 
 9
 Suicide within two (2) years. If the insured dies by suicide within two years from the Date of Issue, the Face Amount will not be paid. The policy proceeds will be limited to the amount of the premiums paid, less any dividends paid in cash or used in reduction of premiums.
 
 
 10
 On the morning of April 27, 1989, Richardson was involved in an automobile accident. A witness to the accident said that Richardson began to swerve for no apparent reason. He crossed the center line and crashed into the abutment of a railroad overpass. Medical evidence was presented to show that Richardson suffered a stroke immediately prior to the accident.
 
 
 11
 As a result of the accident, Richardson suffered brain damage. He was hospitalized until June 16, 1989, including five weeks in the Brain Injury Rehabilitation Unit at the Sacred Heart Medical Center in Spokane. Testimony from the doctors who treated him and monitored his progress at the Rehab Unit revealed that Richardson showed common symptoms of mild brain injury. These symptoms included impulsivity, as well as cognitive, communicative and short-term memory deficits. When Richardson was released on June 16, 1989, he was far from fully recovered. His treatment was to continue on an out-patient basis.
 
 
 12
 Due to the permanent damage caused by his injuries, doctors informed Richardson that he would not be able to handle his prior responsibilities as the head of a complex business enterprise. His family hoped to have him serve in an advisory role sometime in the future.
 
 
 13
 Nine days after his release from the Rehab Unit, on June 25, 1989, Richardson shot himself in the head while lying in bed. By letter dated August 18, 1989, Cecilia Richardson Rice (Horace's daughter) submitted a claim on the two life insurance policies to New England. On February 12, 1990, New England denied Rice's claim, and tendered a check to her in the amount of the premiums paid plus interest. She returned the check to New England on February 16, 1990, and commenced this action.
 
 
 14
 II. Analysis.
 
 
 15
 A. Suicide Exclusion.
 
 
 16
 The district court's findings of fact are reviewed for clear error, and its interpretations of law are reviewed de novo. Meusy v. Montgomery Ward Life Ins. Co., 943 F.2d 1097, 1098 (9th Cir.1991). The court's conclusions may be set aside if based on an erroneous interpretation of the law. Id. In determining a state's law, we are bound by the decisions of its highest court interpreting the law. If the highest court has not addressed an issue, we must follow the decisions of the intermediate appellate courts unless "convinced by other persuasive data that the highest court of the state would decide otherwise." Id. at 1099 (citation omitted).
 
 
 17
 Under Washington law, a prior injury may be found to "cause" the death of a person so that a suicide clause does not prevent coverage, even though the death resulted from the person's own act. This can occur when the suicidal act was "committed in delerium or frenzy and without consciousness or appreciation ... of the fact that such act will in all reasonable probability result in his death, or when the act causing the death is the result of an uncontrollable impulse resulting from a mental condition caused by the injuries." Orcutt v. Spokane County, 364 P.2d 1102, 1103 (Wash.1961) (emphasis in original).
 
 
 18
 In its memorandum opinion, the district court quoted the irresistible impulse test as set forth in Knapp v. Order of Pendo, 79 P. 209 (Wash.1905). In Knapp, the Washington Supreme Court approved a jury instruction which allowed a decedent's heirs to recover under his life insurance policy despite its suicide exclusion if "he [was] impelled [to kill himself] by an insane impulse which he has not the power to resist." Id. at 211. This irresistible impulse test is essentially the same as the test set forth in Orcutt. While the Knapp test purports to get around the suicide exclusion by finding the decedent insane, the Orcutt court based its decision on causation grounds. The district court applied the appropriate legal test under Washington law.
 
 
 19
 New England challenges the sufficiency of the medical evidence presented by Rice in support of the uncontrollable impulse theory. Medical testimony is required to show uncontrollable impulse. Meusy, 943 F.2d at 1100; Orcutt, 364 P.2d at 1105. The burden is on the plaintiff to show, more likely than not, that the prior injury caused the mental condition which resulted in an uncontrollable impulse to commit suicide. Orcutt, 364 P.2d at 1105. The district court found that the medical testimony presented by Rice showed more likely than not that Richardson's death was due to an uncontrollable impulse.
 
 
 20
 The medical testimony in this case was sufficient to support the conclusion that Richardson's death resulted from an uncontrollable impulse. Dr. Donald Hutchings, a psychologist who worked with Richardson during his rehabilitation, testified that as a result of the accident, "Mr. Richardson was impulsive and had impaired ability to resist acting on an impulse," and "because of his injury, when he had an emotion or a feeling, it might be stronger than normal and he could not put the brakes on that feeling." RT 297-98. Rice's theory, that a brain injury can lead to a mental condition causing an uncontrollable impulse to commit suicide, has been accepted in past suicide clause cases under Washington law. See id. at 1106-07; Norbeck v. Mutual of Omaha, 476 P.2d 546 (Wash.App.1970). The district court's finding that the evidence established a direct and unbroken causal link between the automobile accident and the irresistible impulse which resulted in Richardson's death was not clearly erroneous.
 
 
 21
 B. Washington Consumer Protection Act Claims.
 
 
 22
 A district court's grant of summary judgment is reviewed de novo. FDIC v. O'Melveny & Meyers, 969 F.2d 744, 747 (9th Cir.1992). We review the evidence in the light most favorable to the non-moving party to determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Id. To establish a claim under the Washington Consumer Protection Act, a plaintiff must prove the following five elements: (1) an unfair or deceptive act or practice, (2) in trade or commerce, (3) that impacts the public interest, (4) which causes injury to the party in his business or property, and (5) which injury is causally linked to the unfair or deceptive act. Industrial Indemnity Co. of the Northwest, Inc. v. Kallevig, 792 P.2d 520, 528 (Wash.1990).
 
 
 23
 1. Bad Faith Claim.
 
 
 24
 The district court held that Rice's Consumer Protection Act claim based on New England's bad faith failed because New England would have denied the claim even if it had conducted a reasonable inquiry. Thus, Rice could not establish an "injury" causally linked to New England's bad faith. RCW 48.01.030 requires insurers to act in good faith in dealing with insureds. Id. at 526. Acting in bad faith is an unfair or deceptive trade practice for purposes of claims under the Act. Denial of coverage, without reasonable justification, constitutes bad faith. Id. An insurer must make a good faith investigation of the facts before denying coverage and may not deny coverage based on a supposed defense which reasonable investigation would have proved to be without merit. Id.
 
 
 25
 Here, a reasonable investigation would have shown that the suicide exclusion defense had considerable merit, and New England undoubtedly would have denied coverage. New England found substantial evidence to support application of the suicide clause. Although the district court's findings to the contrary were not clearly erroneous, the result was far from obvious. Even if the investigation had been insufficient, which we do not suggest, the district court correctly decided that additional investigation would not have led to granting the claim.
 
 
 26
 2. Delay Claim.
 
 
 27
 The district court also held that Rice's consumer protection claim based on delay in processing her claim fails because New England's response was timely and no injury was shown. We affirm the district court on the ground that Rice failed to show injury to her business or property as a result of New England's delay in processing her claim.
 
 
 28
 To establish an injury for a Consumer Protection Act claim, no monetary damages need to be proven. A nonquantifiable injury will suffice, including loss of use of property. Mason v. Mortgage America, Inc., 792 P.2d 142, 148 (Wash.1990). The injury element is met if a property interest or money is diminished because of defendant's unlawful conduct, even if the expenses caused by the violation are minimal. Id.
 
 
 29
 Rice provided evidence that the uncertainty about the outcome of her claim contributed to a decision to sell her Honda dealership in order to help pay estate taxes. Regardless of whether this loss of a business opportunity is a cognizable injury under the Consumer Protection Act, Rice has not shown that the alleged injury was caused by New England's delay in processing her claim. Since New England would have denied coverage even if the investigation had been completed sooner, Rice would not have received the insurance money before judgment, so would not have had it available to pay the estate taxes. The insurance company had a good faith coverage dispute which it was entitled to litigate. No evidence was presented to suggest that Rice would not have sold the dealership if the bad news had been communicated sooner.
 
 
 30
 3. Attorneys' Fees.
 
 
 31
 Rice requests attorneys' fees on appeal for her Consumer Protection Act claims. Attorneys' fees are recoverable under RCW 19.86.090 upon finding of a Consumer Protection Act violation. Id. at 149. Since Rice has not prevailed on these claims, the attorneys' fee request is denied.
 
 
 32
 C. Post-Judgment Interest Rate.
 
 
 33
 The district court granted New England's Rule 60(b)(1) motion to correct the judgment by replacing the state post-judgment interest rate (11.5%) with the federal rate (4.41%). In general, a district court's grant of Rule 60(b) motion is reviewed for abuse of discretion. Transgo, Inc. v. Ajac Transmission Parts Corp., 911 F.2d 363 (9th Cir.1990). A district court's determination of whether state or federal law applies is reviewed de novo. Olympic Sports Products, Inc. v. Universal Athletic Sales Co., 760 F.2d 910, 912 (9th Cir.1985).
 
 
 34
 The post-judgment interest rate in a diversity action brought in federal court is determined by federal law. Northrop Corp. v. Triad International Marketing, 842 F.2d 1154, 1155 (9th Cir.1988). Erie Railroad v. Tompkins, 304 U.S. 64 (1938), does not compel a different result. Id. at 1156 (citing Weitz, 723 F.2d 1382, 1386-87 (8th Cir.1983)). The "substantive versus procedural" distinction relied upon by Rice is irrelevant where, as here, a constitutionally valid federal statute preempts state law. Id. The district court properly determined that the federal post-judgment interest rate should be applied.
 
 
 35
 Rice claims that regardless of whether the federal post-judgment interest rate should apply, New England waived its right to dispute the interest rate by not raising it in joint pre-trial order. A pretrial order under Rule 16(e) controls by subsequent course of action in the litigation unless modified by subsequent order. ACORN v. City of Phoenix, 798 F.2d 1260, 1272 (9th Cir.1986). Pretrial orders are to be liberally construed to permit consideration of any issues embraced within its language. Id. Here, the pre-trial order listed the 11.5% interest rate as one of "plaintiff's contentions as to disputed issues." The district court did not abuse its discretion by allowing a challenge to the interest rate despite New England's failure to raise its objection sooner. None of the authority cited by Rice compels a different result.
 
 
 36
 Rice also claims that the district court improperly granted New England's Rule 60(b) motion because it was untimely. A Rule 60 motion must be made "within a reasonable time" and "not more than one year after the judgment ... was entered." Fed.R.Civ.P. 60(b). What constitutes "a reasonable time" depends upon the facts of each case, taking into consideration the interest in finality, the reasons for delay, the practical ability of litigant to learn earlier of the grounds relied upon, and prejudice to other parties. Ashford v. Steuart, 657 F.2d 1053, 1055 (9th Cir.1981). When the time for an appeal has expired, the interest in finality must be given great weight. Id. Rice claims that a Rule 60(b)(1) motion is inappropriate after the time for an appeal has expired. According to the language of Rule 60(b) and the test set forth in Ashford, expiration of the time for appeal does not create an absolute bar to the amendment of a judgment. Under the Ashford test, the district court did not abuse its discretion by finding the motion timely and correcting the mistake in the post-judgment interest rate.
 
 
 37
 AFFIRMED.
 
 
 
 *
 Honorable David A. Ezra, United States District Judge for the District of Hawaii, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3